SALVATORE J. FANALE AND MARY K. FANALE, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. BOROUGH OF HASBROUCK HEIGHTS, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued January 20, 1958—Decided March 17, 1958.

See also 46 *N. J. Super.* 238, 134 *A.* 2d 529.

322

*Mr. Ralph W. Chandless* argued the cause for appellant (*Messrs. Chandless, Weller & Kramer,* attorneys; *Mr. Ralph W. Chandless,* of counsel).

*Mr. James A. Major* argued the cause for respondents.

The opinion of the court was delivered by

WEINTRAUB, C. J. The complaint attacked the validity of a supplement to a zoning ordinance. While the action was pending plaintiffs applied for a variance or exception which was denied, and by amendment of the complaint they sought as well a review of that refusal. The trial judge found the supplement to be invalid and for that reason did not pass upon the action of the board of adjustment. The appeal challenges the judgment as entered. The action of the board of adjustment is not before us.

We certified the appeal on our own motion before determination of it by the Appellate Division.

Plaintiffs own property at the intersection of the Boulevard and Washington Place in Hasbrouck Heights. It has a frontage of 144 feet on the Boulevard and a depth of 75 feet. There is presently upon the land a dilapidated residence which plaintiffs plan to raze and replace with a three-story brick structure having two stores on the ground floor and a total of 21 living units. The property is in a business district, in which, prior to the questioned supplement, an apartment house could have been erected.

The supplement, adopted on September 21, 1955, reads:

"No apartment house, or other multiple family dwelling which is arranged, intended or designed to be used by more than two families shall be erected or used in any zone or district in the Borough of Hasbrouck Heights."

■ The bulk of the testimony offered by plaintiffs to support their attack upon the ordinance revolves about the economics of an improvement of their property rather than the appropriateness of the measure either with respect to the entire borough or the business district. The evidence is far from impressive even with respect to the parcel in question, since it falls short of demonstrating that the property may not be utilized for permitted purposes. At any rate, if the ordinance were shown to be invalid as to plaintiffs' property alone, it could not be declared a nullity throughout the borough or in the district in which the parcel is situated. And the proof being insufficient as to the property in question, we need not consider whether the remedy for such localized invalidity would be by variance or exception rather than by an attack upon the ordinance. See *Kozesnik v. Montgomery Township*, 24 *N. J.* 154, 183 (1957).

The trial court did not find for plaintiffs on the thesis described above, but rather held that "an absolute prohibition" of more than two-family units "after the character of the town had been fixed" was beyond the municipal power.

Hasbrouck Heights is a small municipality embracing but 960 acres (approximately 1½ square miles), with a population of 11,000.

Most of the borough is situated upon a plateau. It is zoned for residential or business use, except in the lowlands on the easterly side where a strip between New Jersey State Highway Route 17 and a railroad is zoned for light industry up to the intersection with New Jersey State Highway Route 6, and for limited heavy industry beyond that intersection. There is a small rectangle east of the railroad and abutting the Boroughs of Moonachie and Teterboro, which is zoned for heavy industry. By reason of the terrain, the highways, and the railroad, the industrial districts constitute physically a distinct portion of Hasbrouck Heights with little influence, if any, upon the upper region.

Returning to the plateau, we find the bulk of it zoned for residential districts A and AA, both being one-family

home districts.  The plateau is almost wholly developed. The Boulevard, running east to west, bisects an expansive residential district A.  For a distance of ten blocks, roughly in the center of that district, the Boulevard is zoned for business on both sides of the street.  Thus the business district is surrounded by one-family homes.  Plaintiffs' property is within that business district, three blocks from its easterly terminus.

The borough has nine conventional apartment houses and 13 of the garden type (actually at three sites), having in all 573 living units.  All of the apartment houses, except four of the conventional ones, are in Residence C zones. None is in a business or industrial district.

The business district within which plaintiffs' property is situated is about half residential and half business.  Except for 2½-story residences of the older vintage, none of the structures is more than two stories in height, the business properties being either "taxpayers" or stores with residential units on the second floor, a type of improvement which continues to be authorized for business districts.  This business district is typical of the shopping centers of small residential communities.

■ It cannot be said that every municipality must provide for every use somewhere within its borders.  *Duffcon Concrete Products, Inc. v. Borough of Cresskill,* 1 *N. J.* 509 (1949) ; *Pierro v. Baxendale,* 20 *N. J.* 17 (1955).  Whether a use may be wholly prohibited depends upon its compatibility with the circumstances of the particular municipality, judged in the light of the standards for zoning set forth in *R. S.* 40:55–32.

■■ Apartment houses are not inherently benign.  On the contrary, they present problems of congestion and may have a deleterious impact upon other uses.  *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 *U. S.* 365, 394, 47 *S. Ct.* 114, 71 *L. Ed.* 303 (1926).  Accordingly, an ordinance has been upheld although it confined apartment houses to a small portion of the municipality.  *Guaclides v. Borough of Englewood Cliffs,* 11 *N. J. Super.* 405 (*App.*

*Div.* 1951); *Fox Meadow Estates, Inc. v. Culley,* 233 *App. Div.* 250, 252 *N. Y. S.* 178 (*App. Div.* 1931), affirmed, 261 *N. Y.* 506, 185 *N. E.* 714 (*Ct. App.* 1933). And elsewhere it has been broadly said that circumstances may permit a municipality to zone for a single use to retain its residential character. *Valley View Village, Inc. v. Proffett,* 221 *F.* 2d 412 (6 *Cir.* 1955); *Connor v. Township of Chanhassen,* 249 *Minn.* 205, 81 *N. W.* 2d 789, 795 (*Sup. Ct.* 1957). No definitive pattern can be judicially prescribed; each case must turn upon its own facts.

Actually we do not have the question whether a municipality such as Hasbrouck Heights may bar all multi-family dwellings since in fact it already had 573 such dwelling units when it enacted the challenged supplement. The issue accordingly is whether Hasbrouck Heights may say that it has enough. The trial court suggested a difference between a total prohibition contained in an original ordinance and one thereafter legislated. The distinction cannot be decisive. "The comprehensive plan embraced by an original zoning ordinance is of course mutable. If events should prove that the plan did not fully or correctly meet or anticipate the needs of the total community, amendments may be made * * *." *Kozesnik v. Montgomery Township, supra* (24 *N. J.* at *page* 167). Hence, although apartment houses were initially desirable, a municipality may later conclude that more of them would be inimicable to its total welfare. *Shipman v. Town of Montclair,* 16 *N. J. Super.* 365 (*App. Div.* 1951). It may change its ordinance in pursuit of a well-balanced community.

■ The trial court found an absolute prohibition to be arbitrary "after the character of the town had been fixed." The quoted finding is not further delineated. If it means that a municipality loses its power to change its ordinance because, as here, it is about 90% developed, we could not agree. On the contrary, the fact of extensive development may accentuate the need for change, since less desirable uses are then more certain to cast a shadow upon established neighboring uses. Such in fact is the situation here, for as

stated above the small business district in which plaintiffs' property is situated is now surrounded by one-family homes.

■ If the reference to the fixed character of the town was meant to suggest that some district of the municipality is so studded with apartment houses that intervening lands cannot be used for another purpose, the short answer is that the facts would not support it. *Cf. Casper v. City of Long Branch,* 18 *N. J. Super.* 90 (*App. Div.* 1952). The nine conventional and 13 garden type apartments are well dispersed.

In reviewing zoning ordinances we must be mindful of the limited role of the judiciary. We repeat from *Kozesnik* (24 *N. J.* at *page* 167):

"The zoning statute delegates legislative power to local government. The judiciary of course cannot exercise that power directly, nor indirectly by measuring the policy determination by a judge's private view. The wisdom of legislative action is reviewable only at the polls. The judicial role is tightly circumscribed. We may act only if the presumption in favor of the ordinance is overcome by a clear showing that it is arbitrary or unreasonable. *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405, 416 (1952); *Cobble Close Farm v. Board of Adjustment of Middletown Tp.,* 10 *N. J.* 442, 451 (1952); *Yanow v. Seven Oaks Park, Inc.,* 11 *N. J.* 341, 360 (1953); *Pierro v. Baxendale,* 20 *N. J.* 17 (1955)."

■ Here the business district on the Boulevard is completely enclosed by one-family homes. Even within the district the existing structures are one or two stories in height, except for the old 2½-story residences. Keeping in mind the problem of congestion and the impact of multifamily structures upon the abutting one-family homes, we cannot condemn the legislative decision as arbitrary. The issue before the governing body was fairly debatable, and that being so, the judiciary cannot quarrel with the result.

■ Plaintiffs attack the reasonableness of the supplement in its application to other districts. We doubt the implicit claim that if the supplement is invalid with respect to some other district, it must fall in its entirety. It seems clear that Hasbrouck Heights would desire the prohibition to be effective wherever it may lawfully prevail, and hence

the supplement should be deemed to be severable in meeting a basic attack. *Cf. Kozesnik, supra* (24 *N. J.* at *page* 183) ; *Borough of Sayreville v. Pennsylvania Railroad Co.,* 26 *N. J.* 197 (1958).

At any rate, if we proceed on a contrary assumption, the ordinance must still be upheld. Residence C districts are limited to two-family houses. The mentioned attributes of apartment houses are such that reasonable men may determine they do not belong there. *Village of Euclid, Ohio v. Ambler Realty Co., supra* (272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303). With respect to the several industrial areas, they are wholly unattractive for multistory improvements, and hence the issue seems exceedingly academic. A municipality may determine to separate residential uses from industrial. *Kozesnik v. Montgomery Township, supra* (24 *N. J.* at *page* 169) ; *Duffcon Concrete Products, Inc. v. Borough of Cresskill, supra* (1 *N. J.* 509). True, as the ordinance now stands, one and two-family homes may be erected in those districts. Nonetheless, and apart from the unlikelihood of that development, a multifamily structure in an industrial setting would grossly accentuate the resulting problems. The matter is one of classification, and we cannot say a distinction between one and two-family houses as against multi-family ones even in industrial districts is devoid of reasonable factual support.

Lastly, plaintiffs seem to urge that Bergen County needs more apartment houses and hence Hasbrouck Heights is obliged to leave its area open for them. We heretofore noted the inter-municipal aspects of zoning, *Kozesnik v. Montgomery Township, supra* (24 *N. J.* at *page* 163) and expressly left undecided the question whether a municipality may assail its neighbor's legislation. *Borough of Cresskill v. Borough of Dumont,* 15 *N. J.* 238, 245 (1954) ; *Al Walker, Inc. v. Borough of Stanhope,* 23 *N. J.* 657, 662 (1957). But it is quite another proposition to say that a municipality of 960 acres must accept uses it believes to be injurious, in order to satisfy the requirements of a county. There, of course, is no suggestion that the county is so

developed that Hasbrouck Heights is the last hope for a solution, and hence we do not have the question whether under the existing statute the judiciary could resolve a crisis of that kind.

The judgment is accordingly reversed.

HEHER, J. (concurring). I join in the opinion of the Chief Justice.

Traffic density and congestion are related to land use, and therein lies the means of alleviating the attendant evil consequences to the local economy. A remedy for interference with the free flow of traffic without undue hazard is to be found in the relationship between the arteries of traffic and the abutting lands and the regulation of land use to mitigate the ill effects of traffic overcrowding by a judicious distribution of the burden. There is a close association between the use of land and buildings, and their height and bulk as well, and the abutting streets and highways, their width and relation to one another. Land uses vary in traffic-generating potential; the solution of traffic difficulties does not alone depend on the capacity of streets and highways; and the local authority has a broad discretion, according to zoning principle, to take all measures reasonably deemed essential to the moral and material life of the people and the wholesome development of the community as a political, social, and economic unit.

Such is positive zoning policy: the regulation of the "height, number of stories, and sizes of buildings, and other structures," and the "density of population"; the lessening of "congestion in the streets"; securing "safety from fire, panic and other dangers"; preventing "the overcrowding of land or buildings"; and the avoidance of "undue concentration of population"—these considerations among others. *R. S.* 40:55–30 and 40:55–31, as amended by *L.* 1948, *c.* 305; 40:55–32.

Viewing the action taken here in the context of the circumstances and the other considerations basic to zoning, there was no abuse of the constitutional and statutory power.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.