## Colligan Zoning Case.

126

Argued October 1, 1959.  Before JONES, C. J., BELL, JONES, COHEN, BOK and MCBRIDE, JJ.

reargument refused August 8, 1960.

*Loyal H. Gregg,* with him *Gregg & Price,* for appellant.

*Henry E. Rea, Jr.,* with him *Brandt, Riester, Brandt & Malone,* for appellee.

OPINION BY MR. JUSTICE BELL, May 23, 1960:

The Court, after taking testimony, reversed the Board of Adjustment and entered an Order directing the issuance of a requested building permit.  The Borough of Whitehall appealed.

On January 1, *1938,* Baldwin Highlands Plan, which contained 100 building lots, among which were those presently in controversy, was recorded in the office of the Recorder of Deeds of Allegheny County. The recorded plan contained a dedication of all streets

plotted thereon to public use forever. One of these streets was a *40 foot wide* street called *Earlford Drive*. This was a dead end street which served only lots Nos. 87, 88, 89, 90, 91, 99 and 100; it ran into a public street known as Abbott Drive at the open end. Mr. and Mrs. Aiken on September 8, 1950, acquired title to lots Nos. 90, 91, and part of lot No. 89; on June 4, 1951 they acquired title to lots Nos. 87, 88 and the remaining portion of lot 89. Colligan, who is a successor in title to Mr. and Mrs. Aiken, purchased from the survivor of them in *June, 1957* lots Nos. 87, 88 and a part of lot No. 89.

William T. Hinds, the owner and a successor in title to Mr. and Mrs. Aiken of lots Nos. 99 and 100, which are on the other side of Earlford Drive, opposite to lots Nos. 87 and 88, paved in 1951 and thereafter used approximately 100 feet of Earlford Drive as a means of access to and egress from his property. All of Colligan's property, except that fronting on Earlford Drive, is surrounded by residential homes and *there is no means of ingress or egress for Colligan other than Earlford Drive.*

On *August 28, 1957* Colligan applied for a permit, or alternatively a variance, to build a residence on lots Nos. 87 and 88; his part of lot No. 89 is so small that no house could possibly be erected thereon. The permit official refused a permit and the Board of Adjustment sustained this refusal because, inter alia, a *subdivision* ordinance was pending in Council—it was passed and approved on *November 4, 1957*. The County Court, we repeat, reversed the Board of Adjustment and ordered the issuance of the building permit which Colligan had applied for.

When the Borough of Whitehall was formed in 1948, Earlford Drive had never been actually opened. In 1956 the Borough vacated that portion of Earlford

Drive which abuts Colligan's property, namely lots Nos. 87, 88 and 89, as well as Hinds' property, namely lots Nos. 99 and 100. Hinds continues to use Earlford Drive as an access to and egress from his property and, we repeat, this is the sole means of ingress and egress which Colligan's property possesses.

The Borough of Whitehall passed a zoning ordinance on February 28, 1955. The home which Colligan proposes to erect in this R-2 residential zone will cost $35,000 and will not only conform with, but will far exceed all the requirements of the zoning ordinance, including minimum area, type of dwelling, front, side and rear yard requirements, with one exception. Section 502 of the zoning ordinance provides, inter alia: "(1). A lot with *a minimum frontage of 60 feet** and a minimum area of 9,000 square feet per family shall be provided for every building hereafter erected. . . ." Colligan's lot will have an area 41,400 square feet, but its only frontage on a street is its 122 foot frontage on the dedicated plotted street of Earlford Drive.

This case raises several novel and difficult problems. The Borough's first contention is that the requested permit would violate its ordinance which must be interpreted to mean "a minimum frontage of 60 feet on a public street or on a publicly dedicated street," and Earlford Drive is neither, since it has been vacated by the Borough. In *Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118, the Court said (page 221): " 'Restrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed: Lukens v. Zoning Board of Adjustment, 367 Pa. 608, 80 A. 2d

---

* Italics throughout, ours.

765; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182.' "

According to the Borough's interpretation of its minimum 60 foot frontage ordinance-provision, a property owner could not front his property in the direction he desires; it must be fronted on a public street or a publicly dedicated street. If the Borough's interpretation of this frontage provision is correct it would have no clear or reasonably necessary relation to safety, health or morals; it would be an arbitrary, unreasonable and unjustifiable intermeddling with private ownership of property, and consequently unconstitutional. *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533; *O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587.

The obvious purpose of the zoning ordinance was twofold, to restrict properties to residential uses, and to give proper fire and police protection, garbage and rubbish collection, and sewage disposals—in other words, to protect the public health, safety and morals of the community. Unless the ordinance can be justified under this general welfare principle it is unconstitutional; and even if constitutional, it may under the facts and circumstances of a particular case be unconstitutional when applied to a particular owner's property.

Colligan's residential property contains, we repeat, 41,400 square feet, in contrast to a minimum of 9,000 square feet required by the zoning ordinance, and all the minimum area, side and rear yard and similar requirements exceed those set forth in the Borough Zoning Ordinance. Colligan's house will be 150 feet distant from the nearest house to the North, 150 feet distant from the nearest house to the East, 90 feet distant from the nearest house to the South, and 238 feet distant from the nearest house to the West. Obviously it has more than a 60 foot frontage; it likewise has a

122 foot frontage on Earlford Drive, a 40 or 20* foot wide paved street which connects with the public street of Abbott Drive at the open end.

The County Court after a full hearing and after a careful consideration of the testimony, made many findings of fact and conclusions of law. The Court found, inter alia, that Colligan's proposed "dwelling will be so situated that it will not be, or create, a fire hazard . . . [that] all utilities, gas, electricity and water, and sewer facilities, are present and available to service the subject property . . . [that] a private driveway 20 feet wide leading to the subject property from Abbott Drive, a public street, is of sufficient width to be used by any fire apparatus in the Borough of Whitehall . . . [that] the erection of a residential dwelling upon the subject property will have no detrimental effect on the health, safety and welfare of the residents of the Borough of Whitehall, nor will it be contrary to the best interests of the property owners adjacent to and in the vicinity of appellant's property." The trial Court further found that Colligan "is not creating a new subdivision; and is, therefore, not violating the subdivision ordinance of the Borough of Whitehall." It is not clear whether the lower Court based its Order on the ground that plaintiff's proposed residence did not violate the ordinance, or that plaintiff was entitled to a variance.

Where a Court takes testimony in addition to that taken before a Board of Adjustment, the question on appeal to this Court is whether the lower Court's findings of fact were supported by adequate evidence and whether it committed a clear abuse of discretion or an error of law. *Volpe Appeal*, 384 Pa. 374, 121 A. 2d

---

* The record is conflicting as to whether the paved portion of Earlford Drive is 40 feet or 20 feet wide.

97; *Rolling Green Golf Club Case*, 374 Pa. 450, 97 A. 2d 523; *Pincus v. Power*, 376 Pa. 175, 101 A. 2d 914; *Silverco, Inc. v. Zoning Board of Adjustment*, 379 Pa. 497, 109 A. 2d 147; *Walker v. Zoning Board of Adjustment*, 380 Pa. 228, 110 A. 2d 414. In *Medinger Appeal*, 377 Pa. 217, 104 A. 2d 118, the Court said (page 221): " '. . . an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property: White's Appeal, 287 Pa. 259, 134 A. 409; Taylor v. Moore, 303 Pa. 469, 154 A. 799; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182; Jennings' Appeal, 330 Pa. 154, 198 A. 621; Ward's Appeal, 289 Pa. 458, 137 A. 630; Bryan v. City of Chester, 212 Pa. 259, 61 A. 894; Taylor v. Haverford Township, 299 Pa. 402, 149 A. 639; Perrin's Appeal, 305 Pa. 42, 48, 156 A. 305; Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114; Penna. Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158; St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269, 39 S. Ct. 274; Eubank v. Richmond, 226 U. S. 137, 33 S. Ct. 76.' " Moreover, even if its constitutionality could possibly be sustained, it would be unconstitutional with respect to Colligan's property unless a variance

were granted. We therefore agree with the Court below that the issuance of the building permit to Colligan would not violate the minimum 60 foot frontage requirement of the Borough ordinance.

However, the Borough further contends that Colligan is not entitled to a building permit because (a) a permit is prohibited by Section 14 of the Subdivision Ordinance which (we repeat) was approved November 4, 1957, and (b) because the Allegheny County Court lacked jurisdiction to hear the appeal. Section 14 of the Subdivision Ordinance provides: "No permit to erect any building shall be issued unless the lot abuts a dedicated street." This ordinance also provides that each subdivision plan must be approved by the Borough Engineer, and any owner aggrieved by his decision may appeal to the Borough Council, *whose decision shall be final*. Notwithstanding this provision, the Subdivision Ordinance then goes on to provide in Section 17: "In any case where Council disapproves a subdivision plan, any person aggrieved thereby may . . . appeal therefrom . . . to the Court of Quarter Sessions . . . which Court shall hear the matter de novo, and after hearing enter a decree affirming, reversing or modifying the action of the Council as may appear just in the premises. . . . *The decision of the Court shall be final.*"

We are aware of the law which was not referred to by any of the parties or by the lower Court that an application for a building permit may be refused when the proposed building or use will violate a zoning ordinance which is pending in Council, even though the ordinance is enacted several months after the permit was applied for: *Shender v. Zoning Board of Adjustment*, 388 Pa. 265, 131 A. 2d 90; *Aberman, Inc. v. New Kensington*, 377 Pa. 520, 105 A. 2d 586. However, the Borough contends that the Subdivision Ordinance is

*not* a zoning ordinance. The Borough further contends that a home owner must secure both a zoning permit and a subdivision permit when he desires to erect his home on two lots instead of on one lot; and that no permit can be granted unless the lot abuts a dedicated public street—what happens to a property owner's right when the lot abuts a street which is public without dedication? The Borough further contends that all questions of zoning must be appealed to the County Court, and all questions arising on the subject of subdivision must be appealed to the Quarter Sessions Court.

The primary and important question in this appeal involves a question of zoning and that subject matter is one over which the County Court of Allegheny County has undoubtedly jurisdiction. There is no provision in the Subdivision Ordinance for a variance, and we need not consider or decide the meaning or the validity or the constitutionality of this Borough Subdivision Ordinance either generally or as applied to Colligan's property. It will suffice to say that the Allegheny County Court had jurisdiction of this matter; that there was adequate evidence to support that Court's findings of fact and conclusions; that it did not abuse its discretion or commit any error of law; and that it wisely directed the issuance of a permit to Colligan.

Order affirmed; costs to be paid by appellant.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

William Colligan, the present appellee, petitioned the Zoning Board of Adjustment of the Borough of Whitehall for a variance. The Board, which has jurisdiction over zoning matters only, refused to grant the

variance. Mr. Colligan appealed to the County Court of Allegheny County which held that his proposed building would comply with the terms of the zoning ordinance. Somehow not explained by the record, a question of compliance with the Borough's subdivision ordinance was argued before the County Court, although it was not and could not have been argued before the Zoning Board of Adjustment, whence the case arose. Article XVI of the Borough Code* prescribes that the Borough Council handle all questions concerning subdivision regulation and that any appeal from a decision of the Council in such regard shall be taken to the Court of Quarter Sessions, where the issue is to be heard de novo. The County Court, nevertheless, took jurisdiction of the wrongly injected subdivision question and held that Colligan was not subject to the terms of the subdivision ordinance. The County Court then further ordered "that a *building* permit be issued" to Colligan. (Emphasis supplied.) It is from that order that the Borough of Whitehall appealed.

The opinion for this court holds that the County Court was right in concluding that Colligan's proposed building would comply with the zoning ordinance. With that, I agree. The majority opinion takes note of the Borough's assertion that the County Court had no jurisdiction over the subdivision issue, but it fails to meet that issue. In fact, the opinion for the court ignores the Borough's contention that all that the Zoning Board of Adjustment could competently have issued and, consequently, all that the County Court could order it to issue, was a *zoning* permit and not a building permit. To qualify for a building permit in the Borough of Whitehall an applicant must not only

---

* Act of May 4, 1927, P. L. 519, as amended by the Act of July 19, 1951, P. L. 1026, No. 217, §7, 53 PS §§46671-46678.

comply with zoning and subdivision ordinances, but also with plumbing and electrical codes, as to which there is no evidence of any compliance.

The appellant Borough's contentions on these points seem to me to be unanswerable. If so, the County Court was without jurisdiction of the subdivision issue. The order of that court should, therefore, be modified so that a *zoning* permit may be issued to Colligan, but not a *building* permit.

Accordingly, I dissent.