Delaware County Community College Appeal.

Argued May 28, 1969. Before Bell, C. J., Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Domenic D. Jerome,* for township, appellant.

*Marcus Manoff,* in propria persona, for appellants.

*D. Barry Gibbons,* with him *Gibbons & Buckley,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, June 30, 1969:

Appellee is the Community College of Delaware County, an institution created pursuant to the Community College Act, Act of August 24, 1963, P.L. 1132, §1 et seq., 24 P.S. §5201 et seq. The college was established on March 1, 1967, sponsored by twenty-one local school districts, not including the Marple-Newtown School District. The college commenced operations in temporary facilities in September, 1967. On May 1, 1968, the college entered into an agreement to purchase certain property for a permanent home, the sale being conditioned on the college's obtaining zoning approval.

The tract in question is located in a primarily residential area, and is zoned R-A and R-B residential, the two highest zoning classifications in the township. Of the tract's 122 acres, approximately four are to be used for buildings, 34 for parking areas and roadways, with the remainder (approximately 68%) to be maintained

in natural and/or landscaped condition. Initially the college will have about 1,000 full-time equivalent students, with ultimate expansion resulting in a full-time equivalent student body of 5,000.

The Zoning Board of Adjustment held a hearing and denied the college's application for a special exception. On appeal, the Court of Common Pleas of Delaware County took no additional testimony, but accepting the facts found by the Zoning Board ruled that the Board's reasons for denying the application were legally insufficient, and thus ordered the college's application to be granted. We agree with the excellent reasoning and decision of the court below and affirm its decree.

Initially we must note that §301(2) and §401 of the Marple Township Zoning Ordinance allow a special exception in R-A and R-B zones for "educational, religious, or philanthropic use, hospital or sanitarium." Appellants argue, however, that a community college is not an "educational use" within the ordinance, which they apparently would apply to only elementary and secondary schools, public, private and parochial. Appellants then argue that since the community college cannot properly be granted a special exception, and since it requires too great a change in the zoning scheme to receive a variance, cf. *Di Santo v. Zoning Board of Adjustment,* 410 Pa. 331, 189 A. 2d 135 (1963); *Crafton Borough Appeal,* 409 Pa. 82, 185 A. 2d 533 (1962), the Board could not validly grant the college's application.

We cannot accept appellants' contention that a community college is not an "educational use." Without a contrary indication in the ordinance, we must assume that "educational" has been used in its logical and broadest sense. *Gilden Appeal,* 406 Pa. 484, 492, 178 A. 2d 562, 566 (1962). Viewed in this light, of

course, a community college is an educational use. Appellants argue that because §1307 of the Zoning Ordinance provides parking requirements for other types of schools, without mentioning community colleges, a community college is not an "educational use." We agree with the court below that §1307, which deals only with physical requirements, cannot be read to supersede the use provisions of §§301 and 401.[1] This is hardly the type of provision that under *Gilden Appeal,* supra, would permit us to read "educational" in anything but its usual way.

We next must consider whether under the circumstances of this case, the Zoning Board's denial of the college's application for a special exception was a valid exercise of the Board's discretion.[2] The court below decided that it was not, and we agree.

---

[1] Section 1307 pertinently provides: "A. Public school, private school, parochial school, school dormitory, church, religious use, philanthropic use, hospital or sanitarium for human beings not heretofore erected or established shall provide for adequate off-street parking in the rear or sides of the building to accommodate its staff and a reasonable anticipated number of students, parishioners, members, visitors or persons in any way accommodated or using the grounds and buildings of such institution."

[2] In acting on an application for a special exception, the Board under §1306 of the ordinance is to consider: "A. The size, scope, extent and character of the exception desired. B. The character and type of development in the area surrounding the location for which the exception is desired. C. Whether or not the proposed exception would be an appropriate use in the area or whether it would be detrimental to the surrounding area. D. The zoning classification of the area affected. E. The number, extent, and scope of non-conforming uses, if any, in the area. F. The anticipated future development of the area. G. The effect, if any, on the properties in the area. H. The effect on traffic in the area. I. Whether or not the proposed exception would affect the health, safety, morals, and general welfare of the people and residents in the surrounding area. J. In the granting of special exceptions, the Board of Ad-

We start with the proposition that where there is an application for a legislatively provided special exception, the burden is on those who would deny the exception to prove that it is detrimental to the health, safety, welfare and morals of the community. See, e.g., *Lower Merion Township v. Enokay, Inc.*, 427 Pa. 128, 233 A. 2d 883 (1967); *Temple University v. Zoning Board of Adjustment*, 414 Pa. 191, 199 A. 2d 415 (1964); *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587 (1957). The court below concluded that the reasons advanced by the Board in support of its decision were "legally insufficient, singly or in combination, to form the basis for the denial decreed by the Board."

The Board first maintained that the college would establish a "high density" use inconsistent with the township's comprehensive plan. But most of the special exceptions allowed by the ordinance—other educational institutions, hospitals, clubs, fraternity houses, municipal recreation facilities, telephone central offices, railway and bus stations—would be "high density" uses as apparently defined by the Board. In reality, density as used in zoning parlance refers to *population* in the area in question, a factor to which the creation of a community college (or any of the other enumerated special exceptions) is not relevant. Significantly, in listing the factors to be considered by the Board in passing on special exception applications, §1306 nowhere refers to density, because none of the special exceptions allowed have any significant relation to a potential change in population density of a residential area.

---

justment shall always keep in mind the surrounding traffic conditions so as appropriate regulations may be imposed on any proposed uses to provide for off-street parking either equal to or greater than the off-street parking facilities required within the area by any other than applicable ordinance."

In reality, the Board has in no way shown how the proposed use would be inconsistent with the comprehensive plan. As the court below pointed out, "Mr. Walter Graef, Jr., Executive Director of the Delaware County Planning Commission, testified that he was the planner in charge of the preparation of the subject Comprehensive Plan and that the proposed use was not inconsistent with the objectives of the Comprehensive Plan." The Board has advanced nothing to overcome the great weight of this testimony.

The Board next relied on a potential sewerage problem to deny the college's application.[3] As the court below indicated, although there are presently existing sewer facilities into which the college could tie, the Board believed that those facilities should be reserved for possible residential expansion. No sewerage expansion was planned by the township until 1985. We cannot accept this rationale of the Board, and we agree with the statement of the court below "this factor cannot be utilized to deny needed progress and expansion in the field of education." "Zoning is a tool in the hands of governmental bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not and can not be

---

[3] The Board apparently believed that as a matter of law, the college was not entitled to a special exception until it established "that it is entitled or that it has been granted the right to tie into a municipal sewage disposal system." No such requirement is set out in the zoning ordinance as a condition precedent to obtaining a special exception, and the Board's view of its power thus was in error. However as we read the Board's opinion, it appears also to conclude that the college's presence would be damaging to the health and welfare of the community because of the sewerage problem that would be created. Since community health and welfare is a standard to be considered in granting a special exception, we must thus review the Board's decision on this ground on the merits.

used by those officials as an instrument by which they may shirk their responsibilities. Zoning is a means by which a governmental body can plan for the future— it may not be used as a means to deny the future." *National Land & Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 527-28, 215 A. 2d 597, 610 (1965).

The court below pointed out that once the special exception is granted, the college will still be required to make "appropriate arrangements [for sewerage] . . . consistent with local ordinances and regulations and state statutes and regulations pertaining to sewerage disposal. . . . If expansion is required, then it should be accomplished." We are in accordance with this view; the Board could not properly make a broad scale zoning decision simply because of a potential sewerage problem in the future.

Finally the Board ruled that granting the special exception at issue would create potential traffic problems detrimental to the community. The evidence on this issue was in conflict, and we agree with the court below that the township failed to meet its heavy burden in establishing that the increased traffic would have a *"high degree of probability"* of causing a serious detriment to the community. See *Lower Merion Township v. Enokay, Inc.,* supra; *Archbishop O'Hara's Appeal,* supra. We must accept the proposition that in contemporary society, development and progress are likely to bring with them increased traffic, but this simply is not sufficient, standing alone, to justify the refusal of an otherwise valid land use. *Archbishop O'Hara's Appeal,* supra.

The order of the Court of Common Pleas of Delaware County is affirmed.

Mr. Justice Cohen concurs in the result.

Mr. Chief Justice Bell and Mr. Justice Jones took no part in the consideration or decision of this case.