Girsh Appeal.

Argued May 7, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused April 13, 1970.

*Louis F. Floge,* with him *Arlin M. Adams,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*John R. McConnell,* with him *E. Barclay Cale, Jr., John W. Wellman,* and *Morgan, Lewis & Bockius,* and *Chadwick, Petrikin, Ginsburg and Wellman,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, February 13, 1970:

By agreement dated July 13, 1964, appellant contracted to purchase a 17½ acre tract of land, presently zoned R-1 Residential,[1] in Nether Providence Township, Delaware County. Appellant agreed to pay a minimum of $110,000 (later changed by agreement to $120,000) for the property. He further agreed to request the Township Board of Commissioners to change the R-1 Residential zoning classification so that a high-rise apartment could be built on the property and to pay $140,000 if this request were granted.

Nether Providence is a first-class township with a population of almost 13,000 persons and an area of 4.64 square miles. Approximately 75% of the Township is zoned either R-1 or R-2 Residential, which permit the construction of single-family dwelling units on areas not less than 20,000 and 14,000 square feet, respectively. Multi-unit apartment buildings, although not *explicitly* prohibited, are not provided for in the ordinance. The Township contains the customary commercial and industrial districts, as well as two areas where apartments have been permitted and constructed only after variances were secured.

---

[1] R-1 Residential zones require minimum lot sizes of 20,000 square feet. The most common of the permissible land uses under the R-1 Residential classification is a single-family detached dwelling.

After the Board refused to amend the zoning ordinance, appellant sought a building permit to construct two nine-story luxury apartments, each containing 280 units.[2] The permit was refused since the R-1 Residential classification does not permit multiple dwellings. Appellant appealed to the Zoning Board of Adjustment and announced that he would attack the constitutionality of the zoning ordinance in lieu of seeking a variance. The Zoning Board sustained the ordinance and denied relief. The Court of Common Pleas of Delaware County affirmed, and appellant took this appeal. We hold that the failure of appellee-township's zoning scheme to provide for apartments is unconstitutional and reverse the decree of the court below.

Initially, it is plain that appellee's zoning ordinance indeed makes no provision for apartment uses. Appellee argues that nonetheless apartments are not explicitly *prohibited* by the zoning ordinance. Appellee reasons that although only single-family residential uses are provided for, nowhere does the ordinance say that there shall be no apartments. In theory, an apartment use by variance is available, and appellee urges that this case thus is different from prior cases in which we severely questioned zoning schemes that did not allow given uses in an *entire* municipality. See *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A. 2d 169 (1967); *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 223 A. 2d 683 (1966); *Norate Corp. v. Zoning Board of Adjustment,* 417 Pa. 397, 207 A. 2d 890 (1965).

Appellee's argument, although perhaps initially appealing, cannot withstand analysis. It is settled law that a variance is available *only* on narrow grounds, i.e., "where the property is subjected to an unnecessary

---

[2] Appellant stated in court that he would reduce the number of units per building to 216.

hardship, unique or peculiar to itself, and where the grant thereof will not be contrary to the public interest. The reasons to justify the granting of a variance must be 'substantial, serious and compelling.' " *Poster Advertising Company, Inc. v. Zoning Board of Adjustment,* 408 Pa. 248, 251, 182 A. 2d 521, 523 (1962). In light of this standard, appellee's land-use restriction in the case before us cannot be upheld against constitutional attack because of the *possibility* that an *occasional* property owner may carry the heavy burden of proving sufficient hardship to receive a variance. To be constitutionally sustained, appellee's land-use restriction must be reasonable. If the failure to make allowance in the Township's zoning plan for apartment uses is unreasonable, that restriction does not become any the more reasonable because once in a while, a developer may be able to show the hardship necessary to sustain a petition for a variance.[3] At least for the purposes of this case, the failure to provide for apartments anywhere within the Township must be viewed as the legal equivalent of an explicit total prohibition of apartment houses in the zoning ordinance.

---

[3] We must start with the basic proposition that absent more, an individual should be able to utilize his own land as he sees fit. U.S. Const. Amends. V, XIV. Although zoning is, in general, a proper exercise of police power which can permissibly limit an individual's property rights, *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114 (1926), it goes without saying that the use of the police power cannot be unreasonable. E.g., *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A. 2d 863 (1964). If the zoning ordinance is unreasonable, it is no saving that some people may show the requisite degree of hardship to obtain a variance. The hardship necessary to sustain an application for a variance borders on economic disaster, but this provides no protection for the individual who is disadvantaged to a substantial, but lesser, extent. This infringement on this latter individual's right to use his own property cannot be allowed unless it is reasonable.

Were we to accept appellee's argument, we would encourage the Township in effect to spot-zone a given use on variance-hardship grounds. This approach distorts the question before us, which is whether appellee must provide for apartment living as part of its *plan* of development. Cf. *Eves v. Zoning Board of Adjustment*, 401 Pa. 211, 164 A. 2d 7 (1960).

By emphasizing the possibility that a given landowner *could* obtain a variance, the Township overlooks the broader question that is presented by this case. In refusing to allow apartment development as part of its zoning scheme, appellee has in effect decided to zone *out* the people who would be able to live in the Township if apartments were available. Cf. *National Land and Investment Co. v. Easttown Twp. Board of Adjustment*, 419 Pa. 504, 532, 215 A. 2d 597, 612 (1965) : "The question posed is whether the township can stand in the way of the natural forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live. We have concluded not. A zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid."

We emphasize that we are not here faced with the question whether we can compel appellee to zone *all* of its land to permit apartment development, since this is a case where *nowhere* in the Township are apartments permitted. Instead, we are guided by the reasoning that controlled in *Exton Quarries*, supra. We there stated that "The constitutionality of zoning ordinances which totally prohibit legitimate businesses . . . from an entire community should be regarded with particular circumspection; for unlike the constitutionality of most restrictions on property rights imposed by other ordinances, the constitutionality of total prohibitions

of legitimate businesses cannot be premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community." 425 Pa. at 59, 228 A. 2d at 179. In *Exton Quarries* we struck down an ordinance which did not allow quarrying anywhere in the municipality, just as in *Ammon R. Smith Auto Co. Appeal,* supra, we did not tolerate a total ban on flashing signs and in *Norate Corp.,* supra, we struck down a prohibition on billboards everywhere in the municipality. Here we are faced with a similar case, but its implications are even more critical, for we are here dealing with the crucial problem of population, not with billboards or quarries. Just as we held in *Exton Quarries, Ammon R. Smith,* and *Norate* that the governing bodies must make some provision for the use in question, we today follow those cases and hold that appellee cannot have a zoning scheme that makes no reasonable provision for apartment uses.

Appellee argues that apartment uses would cause a significant population increase with a resulting strain on available municipal services and roads, and would clash with the existing residential neighborhood. But we *explicitly* rejected both these claims in *National Land,* supra: "Zoning is a tool in the hands of governmental bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not and can not be used by those officials as an instrument by which they may shirk their responsibilities. Zoning is a means by which a governmental body can plan for the future—it may not be used as a means to deny the future. . . . Zoning provisions may not be used . . . to avoid the increased responsibilities and economic burdens which time and natural growth invariably bring." 419 Pa. at 527-28, 215 A. 2d at 610. Cf. *Delaware County Community College Appeal,* 435 Pa. 264, 254 A. 2d 641 (1969); *O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957).

244

That reasoning applies equally here. Likewise we re-affirm our holding in *National Land* that protecting the character—really the aesthetic nature—of the municipality is not sufficient justification for an exclusionary zoning technique. 419 Pa. at 528-29, 215 A. 2d at 610-11.

This case presents a situation where, no less than in *National Land,* the Township is trying to "stand in the way of the natural forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live." Appellee here has simply made a decision that it is content with things as they are, and that the expense or change in character that would result from people moving in to find "a comfortable place to live" are for someone else to worry about. That decision is unacceptable. Statistics indicate that people are attempting to move away from the urban core areas, relieving the grossly over-crowded conditions that exist in most of our major cities. Figures show that most jobs that are being created in urban areas, including the one here in question, are in the suburbs. New York Times, June 29, 1969, p. 39 (City Edition). Thus the suburbs, which at one time were merely "bedrooms" for those who worked in the urban core, are now becoming active business areas in their own right. It follows then that formerly "outlying", somewhat rural communities, are now becoming logical areas for development and population growth—in a sense, suburbs to the suburbs. With improvements in regional transportation systems, these areas also are now more accessible to the central city.

In light of this, Nether Providence Township may not permissibly choose to only take as many people as can live in single-family housing, in effect freezing the population at near present levels. Obviously if every municipality took that view, population spread would be completely frustrated. Municipal services must be

provided *somewhere,* and if Nether Providence is a logical place for development to take place, it should not be heard to say that it will not bear its rightful part of the burden.[4]  Certainly it can protect its attractive character by requiring apartments to be built in accordance with (reasonable) set-back, open space, height, and other light-and-air requirements,[5] but it cannot refuse to make any provision for apartment living.  The simple fact that someone is anxious to build apartments is strong indication that the location of this township is such that people are desirous of moving in, and we do not believe Nether Providence can close its doors to those people.

It is not true that the logical result of our holding today is that a municipality must provide for all types of land use.  This case deals with the right of people to *live on land,* a very different problem than whether

---

[4] Perhaps in an ideal world, planning and zoning would be done on a *regional* basis, so that a given community would have apartments, while an adjoining community would not.  But as long as we allow zoning to be done community by community, it is intolerable to allow one municipality (or many municipalities) to close its doors at the expense of surrounding communities and the central city.

[5] As appellants indicate, the apartments here in question would cover only 2.7 acres of a 17.7 acre tract, would be located far back from the road and adjacent properties, and would be screened by existing high trees.  Over half of the trees now on the tract would be saved.

It should be pointed out that much of the opposition to apartment uses in suburban communities is based on fictitious emotional appeals which insist on categorizing all apartments as being equivalent to the worst big-city tenements.  See Babcock and Bosselman, Suburban Zoning and the Apartment Boom, 111 U. Pa. L. Rev. 1040, 1051-1072 (1963), wherein the authors also convincingly refute the arguments that apartments necessarily will not "pay their own way"; cut off light and air; become slums; reduce property values; be destructive to the "character of the community"; and bring in "low-class" people.

appellee must allow certain industrial uses within its borders.[6] Apartment living is a fact of life that communities like Nether Providence must learn to accept. If Nether Providence is located so that it is a place where apartment living is in demand, it must provide for apartments in its plan for future growth; it cannot be allowed to close its doors to others seeking a "comfortable place to live."

The order of the Court of Common Pleas of Delaware County is reversed.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

This case poses for me a very difficult problem. One of the most important rights, privileges and powers which (at least until recently) has differentiated our Country from Communist and Socialist Countries, is the right of ownership and the concomitant use of property. The only limitation or restriction thereof was "sic utere tuo ut alienum non laedas"—a right to use one's property in any way and manner and for any purpose the owner desires, except and unless it injures the property of another, or endangers or seriously affects the health or morals or safety of others.

Then along came zoning with its desirable objectives. However, desirable or worthwhile objectives have too often been carried to an unfair or unwise or unjustifiable extreme, or an extreme which makes the Act or Ordinance illegal or unconstitutional.

---

[6] Even in the latter case, if the Township instituted a total ban on a given use, that decision would be open to at least considerable question under our decision in *Exton Quarries, supra.*

In addition, at least hypothetically, appellee could show that apartments are not appropriate on the site where appellant wishes to build, but that question is not before us as long as the zoning ordinance in question is fatally defective on its face. Appellee could properly decide that apartments are more appropriate in one part of the Township than in another, but it cannot decide that apartments can fit in *no* part of the Township.

This Ordinance cannot be sustained under the theory or unwitting pretense that it is necessary for, or has a substantial relationship to the protection of the health or morals or safety of the people of that Township, and, as Justice ROBERTS points out, it cannot and should not be legalized or Constitutionalized under the theory of "general welfare"* or "public interest or worthy objectives." Furthermore, Courts, Legislators, zoning bodies and most of the public have forgotten or rendered meaningless Article I, Section 1, of the Constitution of Pennsylvania, which provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of . . . acquiring, possessing and protecting property. . . ."

I believe that a County or Township can "reasonably" regulate the location, size, height, setbacks, light and air requirements, etc. of apartment houses or buildings, but that neither a County nor a Township can *totally prohibit* all apartment houses or buildings. Cf. *Exton Quarries Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A. 2d 169. Whether an ordinance which makes no provision for, or authorization of, apartment houses is equivalent to a total prohibition thereof raises (at least, for me) a difficult question. However, I have come to the conclusion that the present zoning ordinance (1) *in practical effect* amounts to a prohibition of apartment houses, and (2) cannot be saved or legalized by a right to a variance which is grantable only upon proof of (a) unnecessary hardship upon and which is unique or peculiar to the property involved, as distinguished from the hardship arising from the impact of the zoning ordinance upon the en-

---

* Aesthetics have no place or part in zoning, either as support or justification for, or rejection of any plan. Moreover, it is sometimes forgotten that very few can ever agree on what is or is not "aesthetic."

tire district, and (b) where the proposed variance will not be contrary to the public safety, health, morals or general welfare: *Di Santo v. Zoning Board of Adjustment,* 410 Pa. 331, 189 A. 2d 135; *Sheedy v. Zoning Board of Adjustment,* 409 Pa. 655, 187 A. 2d 907; *Brennen v. Zoning Board of Adjustment,* 409 Pa. 376, 187 A. 2d 180; *J. B. Simon & Co. v. Zoning Board of Adjustment,* 403 Pa. 176, 168 A. 2d 317.

For these reasons, I concur in the Opinion of the Court.

----------

DISSENTING OPINION BY MR. JUSTICE JONES:

Appellant attacks the constitutionality of the zoning ordinance in question on two levels. First, he maintains that it is unconstitutional for the Township to prohibit the construction of apartment buildings throughout the entire township. Second, he argues that the ordinance as applied to the Duer Tract in particular is unconstitutional because the property cannot reasonably be graded and developed for single-family residences.

The principles governing the disposition of cases involving a constitutional attack on a zoning ordinance have been oft-repeated in our case law. "The test of constitutionality of a zoning ordinance is whether it bears a substantial relation to the health, safety, morals or general welfare of the public: [Citing authority]. One who challenges the constitutionality of a zoning ordinance has no light burden and it is settled that before a zoning ordinance can be declared unconstitutional it must at least be shown that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislative judgment is fairly debatable, the legislative judgment must

be allowed to control: [Citing authorities]." *Glorioso Appeal,* 413 Pa. 194, 198, 196 A. 2d 668 (1964).[1]

Appellant's first argument is that the zoning ordinance is unconstitutional in that it makes no provision for apartment buildings anywhere in the township. Appellant maintains that this Court looks askance at zoning ordinances which totally prohibit a legitimate use anywhere within the municipality, citing *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A. 2d 169 (1967); *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 223 A. 2d 683 (1966); *Norate Corp. v. Zoning Board of Adjustment,* 417 Pa. 397, 207 A. 2d 890 (1965); *Eller v. Board of Adjustment,* 414 Pa. 1, 198 A. 2d 863 (1964). Of these four cases, the authority most in point is *Exton.*[2] In *Exton* we struck down a zoning ordinance as unconstitutional which prohibited any and all quarrying within the township. We noted that the township was sparsely settled and that the proposed quarry would be located some distance from the nearest residential neighborhood. We held that "a zoning ordinance which totally excludes a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance

---

[1] See also: *National Land and Investment Co. v. Easttown Twp. Bd. of Adjustment,* 419 Pa. 504, 511, 512, 215 A. 2d 597 (1965); *Colligan Zoning Case,* 401 Pa. 125, 131, 162 A. 2d 652 (1960); *Bilbar Constr. Co. v. Easttown Twp. Bd. of Adjustment,* 393 Pa. 62, 72, 141 A. 2d 851 (1958).

[2] In *Norate* we struck down an ordinance which prohibited all "off-site" advertising signs anywhere within the township. In *Ammon Smith* we struck down a similar ordinance banning all flashing signs. In *Eller* we voided an ordinance requiring minimum setoffs for mushroom houses on the grounds that the setoffs would require a person to own approximately 69 acres before he could grow mushrooms. I conclude that none of these three cases is cogent authority for the position advanced by the appellant.

which merely confines that business to a certain area in the municipality." (425 Pa. at 60)

The Township, in support of its position that the zoning ordinance in question is constitutional, cites two decisions of our Court. In *Dunlap Appeal*, 370 Pa. 31, 87 A. 2d 299 (1952), we upheld an ordinance which forbade the construction of row houses, and in *Mutual Supply Co. Appeal*, 366 Pa. 424, 77 A. 2d 612 (1951), we upheld an ordinance which permitted only single-family dwellings in the face of a challenge from a coal mining company which wanted to build coal mining structures on the surface of the land which were necessary for the mining operations below the surface.[3]

My research indicates that the exact question presented on this appeal has never been decided at the appellate level in this Commonwealth. The one decision I have found most directly on point is *Lofmer, Inc. v. Board of Adjustment of Easttown Twp.*, 11 Chester Cty. R. 66 (1962), in which the Court of Common Pleas of Chester County upheld the constitutionality of a zoning ordinance which changed the applicable zoning classification to prohibit apartment buildings. The court held that the fact that a zoning ordinance makes no provision for a particular use of property in the township does not, ipso facto, make the ordinance unconstitutional. I am in agreement with this conclusion.

---

[3] In *Mutual Supply*, we stated in pertinent part: "The exclusion of industrial use involves an exercise of legislative discretion under the existing facts and circumstances. In the present instance, there was evidence that 'the highest and best use of the area is residential.' Within a half-mile radius of Mutual's surface plot there are not less than forty residences of an average value of $30,000 each. Of course, if the ordinance's exclusion of industrial use would conclusively prevent the appellants from mining and removing their coal for which they have full mining rights without liability for surface support, then a different question would be presented." (366 Pa. at 430, 431)

*Exton,* upon which the majority opinion places the most reliance, can be distinguished on two grounds. First, *Exton* involved the total prohibition of a valid use. The ordinance now before us does not involve a total prohibition; the ordinance simply does not make provision for apartment buildings. While at first blush this might appear to be a distinction without a difference, there is, in reality, an important difference. Apartment buildings are permissible—and, in fact, have been constructed—if a variance is granted. Therefore, it is not correct to say that the Township totally prohibits the construction of apartment buildings.[4]

Second, the natural expansion of the majority's conclusion is that Nether Providence must provide for all types of high-density, residential land use. This is an unsound result. It makes no more sense to require a rural township to provide for high-rise apartments than to provide for industrial zones; likewise, it would not make sense to require an industrial municipality to provide for agricultural uses. By concluding that the township must provide for high-rise apartments, the majority also impliedly holds that every possible use, having no greater detrimental effect, must also be allowed. In my opinion, this decision places us in the position of a "super board of adjustment" or "planning commission of last resort," a position which we have heretofore specifically rejected. *National Land and Investment Co. v. Easttown Twp. Bd. of Adjustment,* 419 Pa. 504, 521-22, 215 A. 2d 597, 606-07 (1965).

Even if I were to accept appellant's logic, it must still be affirmatively demonstrated that high-rise apartment buildings are a *suitable* land use within the township. The court below held that appellant had failed to carry his burden of proof, and I find no fault in this

---

[4] *Cf. Honey Brook Twp. v. Alenovitz,* 430 Pa. 614, 243 A. 2d 330 (1968).

decision. The evidence indicates that 90% of the township is presently already developed. A land planner and municipal consultant testified that he had studied the remaining undeveloped properties within the township and concluded that none of them was suitable for high-rise apartments. Furthermore, the township is residential in nature with a relatively sparse population. A high-rise apartment project would produce a significant increase in population which would tax the limited municipal services available in the township.[5] Accordingly, I find it impossible to say on the face of this record that a township such as Nether Providence is constitutionally required to make provision for high-rise apartments in its zoning ordinances.[6]

I turn now to appellant's second contention, *viz.*, that the zoning ordinance permitting only single-family dwellings is unconstitutional as applied to the Duer Tract in particular. Appellant's first argument under this heading is that the ordinance has no relation to the public health, safety and welfare. I cannot agree. The proposed apartment complex would be the largest of its kind in Delaware County, housing an estimated 1,600 persons, and would increase the population of the township by 13%. We cannot refute the conclusion that such a large and rapid increase in population

---

[5] Since I would hold that appellant failed to prove that high-rise apartments would be a suitable land use in the township, *Exton* is inapposite, for there was no question in *Exton* that quarrying was a suitable land use.

[6] Decisions in other jurisdictions support this conclusion. See, e.g., *Valley View Village, Inc. v. Proffett*, 221 F. 2d 412, 418 (6th Cir. 1955) (per POTTER STEWART, J.) ; *Fanale v. Hasbrouck Heights*, 26 N. J. 320, 139 A. 2d 749, 752 (1958) (per WEINTRAUB, C. J.) ; *Connor v. Township of Chanhassen*, 249 Minn. 205, 81 N.W. 2d 789, 794-95 (1957) ; *Fox Meadow Estates, Inc. v. Culley*, 233 App. Div. 250, 252 N.Y.S. 178 (1931), *aff'd per curiam*, 261 N. Y. 506, 185 N.E. 714 (1933) ; *Guaclides v. Borough of Englewood Cliffs*, 11 N.J.S. 405, 78 A. 2d 435 (1951) (per WILLIAM BRENNAN, J.).

would place a strain on the township's limited munici-
pal services and rural roads. Furthermore, except for
the railroad tracks, the area surrounding the Duer
Tract is composed exclusively of single-family dwell-
ings. The proposed apartment towers would be incom-
patible with the existing residential neighborhood and
would introduce a structure completely out of propor-
tion to any other building in the township. Further-
more, the complex would present a density problem in
this area of the township. The First Class Township
Code specifically empowers local municipalities to zone
for density;[7] I conclude that the ordinance in question
is a proper application of that power.

Appellant's second argument is that the ordinance
is unreasonable, arbitrary and discriminatory as ap-
plied to the Duer Tract because of the prohibitive ex-
pense involved in grading and preparing the land for
single-family residences. There is no question that the
property contains some topographical features which
are less than desirable for the construction of single-
family homes. The record is replete with conflicting
testimony, however, as to how much expense would be
required to grade the tract and divert the creek which
runs through the property. There is evidence in the
record to support the court's conclusion that these
preparatory expenses would not make the cost of the
homes prohibitively expensive. The court pointed out
that a development of single-family houses is now be-
ing constructed on a neighboring tract which is very
similar topographically to the Duer Tract. Further-
more, appellant made a firm commitment to buy the
property regardless of whether he was successful in

---

[7] Act of June 24, 1931, P. L. 1206, art. XXXI, §3101, as amend-
ed, 53 P.S. §58101. This section has been repealed by the recently
enacted Pennsylvania Municipalities Planning Code. The new Code
also empowers municipalities to zone for density. Act of July 31,
1968, P. L.    , §603(4), 53 P.S. §10603(4) (pp).

having the zoning classification changed. Apparently when he purchased the property, therefore, appellant concluded that he could successfully build and sell single-family homes on the tract.

Therefore, I would hold that the Township is *not* constitutionally required to provide for multiple-unit apartment buildings in its zoning ordinance and that the ordinance in question is not unconstitutional as applied to the Duer Tract.

I dissent.

Mr. Justice COHEN and Mr. Justice POMEROY join in this dissenting opinion.