In re: Appeal of Michael J. Stefonick from the
Decision of the Zoning Hearing Board
of Upper Gwynedd Township.

Argued October 7, 1970, before President Judge
BOWMAN and Judges CRUMLISH, KRAMER, WILKINSON,
MANDERINO, MENCER and BARBIERI.

*Paul W. Callahan,* with him *Fox, Differ, and DiGiacomo,* for appellant.

*Albert R. Subers,* with him *Bean, DeAngelis, Kaufmann and Giangiulio,* for appellee.

OPINION BY JUDGE WILKINSON filed December 9, 1970.

This case involves an application to the Zoning Hearing Board for a special exception in a commercial district to construct a gasoline service station. Such a special exception is authorized by the zoning ordinance where the property is located in Upper Gwynedd Township, Montgomery County. The Zoning Hearing Board held a hearing and denied the application. The applicant appealed to the Court of Common Pleas of Montgomery County on the record made before the Zoning Hearing Board. The Common Pleas Court affirmed the order of the Zoning Hearing Board. We must reverse.

There does not seem to be any dispute on the facts. There is no substantial dispute on the law since both parties appear to rely on the same leading cases.

It was in the application of the law to these facts wherein the Zoning Hearing Board and the lower court fell into error. The evidence offered, when considered in the light of the well established line of decisions of the Pennsylvania Supreme Court, will not support the finding that the proposed gasoline service station will damage the health, safety, morals and welfare of the community. Without such legally sufficient evidence,

the application for the special exception must be granted.

It is important to have in mind, as pointed out by the court below, that the *applicant* does not have the burden of proving that the grant of the exception will not injure the health, safety, morals, or welfare of the community. Rather, the burden is on the *Board* to prove that the grant of the exception *would* be injurious. *Delaware County Community College Appeal,* 435 Pa. 264, 254 A. 2d 641 (1969) ; *Jacobi v. Zoning Board of Adjustment,* 413 Pa. 286, 196 A. 2d 742 (1964). In a concurring opinion in the *Jacobi* case, Chief Justice BELL recognizes this rule, albeit criticizing it as illogical. The opposite is true in the instance of an application for a variance, where the burden of proof is on the applicant. *See Kline Zoning Case,* 395 Pa. 122, 148 A. 2d 915 (1959). Illogical as it may seem, this distinction is made in other states. *See* cases collected in an article entitled "Zoning Regulations as to Gasoline Filling Stations", 75 A.L.R. 2d 168 (1961). *See also* Michie, *The Special Exception in Zoning in Pennsylvania—1963,* 36 Temple *Law Quarterly* 298 (1963).

Here the applicant offered testimony that admittedly brought him within the requirements for an exception. On the important element of safety, applicant's testimony showed that there would not be any increase in traffic but rather, in fact, the traffic safety element on this corner would be improved. No evidence was offered by any witness to the contrary. Herein lies the important distinction between this case and *Facciolo and Barrett v. Board of Adjustment,* No. 248 Jan. T. 1970 (S. Ct. Pa., filed Oct. 9, 1970) and *Blair v. Board of Adjustment,* 403 Pa. 105, 169 A. 2d 49 (1961). In each of these cases the element of increased traffic congestion due to a new gasoline service station was considered controlling.

Only two witnesses testified in opposition to the application. One was the owner of a competing gasoline service station who testified that there was not enough business for another station. Such an economic argument must fail. *See National Land and Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A. 2d 597 (1965).

The other witness in opposition testified that the Township Commissioners and the Planning Commission opposed this application because there were too many service stations in the area and because the existing ones engaged in undesirable if not illegal actions, thereby creating a law enforcement problem. No effort was made to tie this applicant with any prior improper conduct. The fact that the Zoning Ordinance recognizes the right to a special exception for a gasoline service station is conclusive that one properly operated is not in itself injurious.

Finally, the Board was of the view that the addition of another gasoline service station at this location "would detract and injure the neighboring properties. and the character of the neighborhood". On the contrary, if one thing is clear it is that the essential character of this neighborhood is one of many gasoline service stations. Without substantial legally competent evidence to support it, the court below should not, and this court cannot, affirm a finding that one more station will, in and of itself, detract or injure the neighborhood properties, much less change the character of the neighborhood.

The order of the court below is reversed. Costs are. placed on the appellee.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The decisions of the Zoning Hearing Board and of the court below should be affirmed.

A zoning hearing lacks the formality of a judicial proceeding. Rules of evidence do not apply. See Pennsylvania Municipalities Planning Code §908(6), 53 P.S. §10908(6). It does not matter that irrelevant matter is brought forth, unless the decision is based on that evidence, because there is no jury. See Ryan, *Pennsylvania Zoning Law and Practice* §9.4.14 (1970). But a zoning hearing board has a similar fact-finding function as a jury. Thus the rule that appellate courts, cannot impinge on this element of the decision, but can only examine the record for bias, ill will, prejudice, or some other overriding factor which may have unduly influenced the board in its exercise of discretion. Barring such a factor, an appellate court cannot overturn the board's decision by looking to the relative merits of the case, but must affirm the board's action because the appellate court is "neither a super board of adjustment nor a planning commission of last resort," but "acts as a judicial overseer, drawing the limits beyond which local regulation may not go, but loathing to interfere, within those limits, with the discretion of local governing bodies." *National Land & Investment Co. v. Easttown Twp. Bd. of Adj.*, 419 Pa. 504, 521, 215 A. 2d 597, 607 (1965). This is especially so since an appellate court is far removed from the actual demeanor of the action and must trust that a lower link in the adjudication process has acted within the realm of competent justice.

As to substantial credible evidence, a board, again like a jury, may give varying weight to the evidence presented to it. Thus a zoning hearing board may elect to give the evidence of one expert credence over that of two experts who present contrary testimony. *Harrison v. Upper Merion Twp. Zoning Bd. of Adj.*, 45 D. & C. 2d 452 (Montg. 1968).

The board here could rightfully have given little weight to or completely disregarded the testimony of

appellant's witness, Williams, and relied instead on other words said at the hearing. Moreover, the board members here could rightfully have acted upon their own personal knowledge in determining whether the requirements of the ordinance were met because their reasons are sufficiently specified in their Opinion. Lending credence to this is the Pennsylvania Municipalities Planning Code, the effective date of which is January 1, 1969. It provides, for the first time, specific rules governing the receipt of evidence outside of the hearing: "(8) The board or the hearing officer. . . . shall not inspect the site or its surroundings with any party or his representative unless all parties are given an opportunity to be present." Code §908(8), 53 P.S. §10908(8). Zoning boards very likely view properties involved in proceedings before them, either before the hearing or afterwards, and may, by implication, properly do so alone provided that neither party is present. This Code section indicates, then, that a board member is permitted to use his own knowledge of his community to arrive at a correct decision without the need for his thoughts to be presented at the hearing. *His reasons need only appear within the Opinion of the board.* This is proper since zoning hearing boards are intentionally created by the legislature to act on a local level, and board members are purposely drawn from the local community.

It might be argued that the applicant is prejudiced by board members using their independent knowledge to override opinions given at the hearing. The board, however, has no obligation at the hearing or any time prior to its written opinion to state reasons for its decision. The applicant is not therefore deprived of an opportunity to counter such reasoning because he has no right to object until after the board's decision, whereupon he can appeal the decision and its reason-

ing to the county's Court of Common Pleas. There, as here, the court would examine the evidence and the reasons for the board's decision to determine if the board members have abused their discretion in deciding as they did. If the evidence and reasons given seem sufficient after an examination of the record, including the Opinion of the board, the court has no choice but to affirm the board's decision as within its discretion. *Rolling Green Golf Club Case*, 374 Pa. 450, 458, 97 A. 2d 523, 527 (1953); *Archbishop O'Hara's Appeal*, 389 Pa. 35, 51, 131 A. 2d 587, 595 (1957).

Here the board was guided by §1402 of the township ordinance. It was to determine that the proposed change would not substantially injure or detract from the use of neighboring property, or from the character of the neighborhood (§1402B), and that the proposed change would serve the best interests of the Township, the convenience of the community, and the public welfare (1402C).

As to the character of the neighborhood and the best interests of the township, the record is unclear as to how close the proposed gas station would be to the ten stations already existing in or near the township, although the board no doubt had the exact locations firmly in mind. It seems certain, however, that the area was not predominated by gas stations, but simply that there were a sufficient number of them to satisfy the needs of the township. Certainly it was the board's function, not any oil company's, to decide whether another gas station was necessary in this commercial zone. This view was recently taken by the Supreme Court in *Marple Township Appeal*, 440 Pa. 508, 269 A. 2d 699 (1970), where it recognized that the board, when faced with a record that indicated that the area was already served by an adequate number of service stations, did not abuse its discretion by deciding to refuse a pro-

posed exception to permit the building of yet another gasoline station.

This was not a decision based on economic reasons, i.e., that there was not enough business for another station. It mattered little to the board whether Shell Oil Co. could, in Emersonian terms, build a "better mousetrap" and succeed where others had failed in the area. What did matter to them was that, should the business fail, Shell would, by its own admission, sell to a competitor, i.e., someone who would not be obligated by the promises of propriety which Shell presently makes. Above all was the prospect of having yet another corner of the township's commercial zone taken up with a gas station when, in the board's judgment, the community already has enough stations for its needs.

In addition, the board could have taken cognizance of the foreign ownership element—the possible difficulties of having to deal with potential problems of ordinance enforcement with a distant, and possibly uncooperative, owner.

Added to this, that local residents would not be greatly convenienced by yet another station, the board could well have concluded that the proposed use was not in the best interests of the community's welfare. In fact, the record indicates that the majority of customers for the proposed station were to be from outside the township, that the primary benefit would therefore not be to township residents, and that much growth would be needed in the area presumably before the proposed station could fare any better than the existing stations. This could have prompted the board to believe the chances for another closed station, and perhaps a change in ownership, was very much a possibility.

Nor was the board's decision based on aesthetic reasons. Aesthetic criteria of a general type form a per-

missible basis for zoning decisions, while aesthetic judgments which are too detailed, or which pertain to design usually do not. See Ryan, *Pennsylvania Zoning Law and Practice* §5.3.11 (1970). This board was not primarily concerned with the design, construction, or beauty of this proposed gas station. They were mostly concerned, however, that too many gas stations were creeping into the township. Two eminently qualified local authorities—the Board of Commissioners and the Planning Commission—had registered their objections at the hearing to that very fact. If this were not sufficiently persuasive, the board could have concluded that parts "B" and "C" of §1402, taken together meant, in effect, that the board was to encourage the most appropriate use of the land, and that the proposed gas station was not such a use.

The traffic congestion issue here notwithstanding, *Blair v. Board of Adjustment*, 403 Pa. 105, 169 A. 2d 49 (1961) controls this case. In that gasoline station case, the board was to consider as one of its standards: "(3) the effect of the proposed use upon the character of the immediate neighborhood so as to conserve the value of existing buildings *and encourage the most appropriate use of the land.*" (emphasis added). The Supreme Court concluded that the zoning board's refusal to grant the special exception was clearly not unreasonable because the proposed use "was not the most advantageous use of the land." *Blair v. Board of Adjustment,* supra, at page 108.

It was not unreasonable for this board to conclude that parts "B" and "C" of §1402 dictated the same result. Although there would not be four other stations within 350 feet of this proposed station, as in *Blair*, it seems from the record that ten stations already exist within this area, which nearly equals that of the *Blair* case where ten existed within a one and one-half square mile area. The township population was no doubt dif-

ferent in *Blair*, but such a factor as density of population compared to the number of existing stations was for the board to consider.

The record also indicates that the proliferation of gas stations within this township would continue. An application has been submitted to this same board requesting that permission be granted for yet another gas station on the diagonal corner to appellant.

This board did not abuse its discretion by deciding that the proposed gas station was not the most appropriate use of the land. Indeed, the testimony and discussions presented to the board and their own knowledge of their community, all adequately noted in the Opinion of the board and in the record as a whole, compelled them to decide as they did.