## Sites, et al. *v.* West Goshen Zoning Hearing Board.

Argued January 5, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and BLATT. Judge ROGERS disqualified himself and did not participate.

*Joseph A. Damico, Jr.,* with him *Fronefield, De-Furia and Petrikin, Joseph F. Harvey,* and *MacElree, Platt and Harvey,* for appellants.

*Thomas M. Twardowski,* with him *Robert W. Lentz* and *Lentz, Riley, Cantor, Kilgore & Massey,* for appellee.

OPINION BY JUDGE WILKINSON, March 10, 1972:

This is an appeal from an Order of the Court of Common Pleas of Chester County, affirming the grant-

ing of a Special Exception by the Zoning Hearing Board of West Goshen Township to the applicant to operate a club, i.e., an American Legion Post, in an R-3 Residential District. The Zoning Ordinance provides for a Special Exception in an R-3 District: "Club, fraternal institution, nonprofit swimming pool, provided that a principal activity shall not be one which is customarily carried on as a business, and provided that all services shall be for members and their guests." The Board, affirmed by the court below, found that the applicant met the requirements for a Special Exception as provided in the Zoning Ordinance, and that the protestants had not met their burden of showing that granting the Special Exception would be detrimental to the health, safety, welfare, and morals of the community.

We must reverse on the basis that the applicant has not met the requirements to be eligible for the Special Exception. The testimony of applicant's President and only witness makes it quite clear that the applicant intends to secure a liquor license and carry on a principal activity that is customarily carried on as a business. In many places in the record, the President of applicant equivocated as to whether the club would secure a liquor license. For example:

"Q. You are familiar with the American Legion in West Chester here or the VFW in Paoli, or places of that type, where you can go, you know, any time during the afternoon or in the evening, seven days a week, and get a drink if you are a member?

"A. If you are a member.

"Q. Do you contemplate that type of a facility either now or sometime in the future?

"A. In all probability maybe sometime in the future." However, when the question was put directly, it was given a direct answer:

"Q. Question was asked previously about the serving of alcoholic beverages in your present location. I

don't believe the question was answered as to whether you planned to apply for a license should you be granted the special exception at the Westtown Road location. Do you plan to apply for a liquor license either now, immediately or in the future?

"A. Yes, we do."

In our opinion, it would be difficult to think of a more appropriate example of what the Zoning Ordinance was aiming to exclude from the Special Exception provision than a club with a liquor license. The law is quite clear that the burden is on the protestants or Board to show the proposed Special Exception would be detrimental to the health, safety, welfare, and morals of the community. *See Delaware County Community College Appeal*, 435 Pa. 264, 254 A. 2d 641 (1969); *Appeal of Stefonick*, 1 Pa. Commonwealth Ct. 13, 271 A. 2d 707 (1970). However, before this burden must be assumed by the protestants or the Board, the applicant must bring itself within the class eligible for the Special Exception. The most recent case pointing out the distinction between the applicant's burden to bring himself within the class eligible for the Special Exception and the burden of the protestants to show it would be contrary to the public welfare is *Berlant, et al. v. Lower Merion Township Zoning Hearing Board*, 2 Pa. Commonwealth Ct. 583, 279 A. 2d 400 (1971), wherein it is stated: "In this case, the Synagogue met its requirements by showing that its application fell within the provision of the ordinance permitting a religious use by special exception and by putting forth a plan showing the proposed use of its land."

The order of the lower court is reversed.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I dissent. Pursuant to the admonition of the Supreme Court we have repeatedly said that it is not the

Appellate Court's right or duty to fancy themselves as super zoning boards.[1] Neither do we apply our interpretation of zoning ordinances beyond the factual posture the application submits to the local zoning board or common pleas court.[2]

Section 203.1(4)(e) of the West Goshen Township Zoning Ordinance permits special exceptions in this zoning district for fraternal institutions ". . . provided that a principal activity shall not be one which is customarily carried on as a business, and provided that all services shall be for members and their guests." The majority relies on the testimony of the president of the American Legion Post, the applicant, that it intends at some yet undetermined point in time to apply for a liquor license. From this assertion, it concludes that the sale of alcoholic beverages will be "a principal activity" of the fraternal institution. On this basis alone, today the court holds that by application of law the ordinance bars this use. No additional testimony was heard by the court below. It is for us at this juncture to review the findings of the Board. *Village 2 at New Hope, Inc. Appeals,* 429 Pa. 626, 241 A. 2d 81 (1968).

The Board met the legal issue presented by appellant who charged that a proposed activity of another nature would be an unlawful use. In considering the testi-

---

[1] *Cohen v. Zoning Board of Adjustment of Philadelphia,* 3 Pa. Commonwealth Ct. 50, 276 A. 2d 352 (1971), said: ". . . this Court must exercise self-restraint as to substituting our opinions far removed from the particular zoning hearing for the well considered decision of local officials." *See also, Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, A. 2d (1971).

[2] This is not to suggest that the courts may not consider factual changes in the status of ordinances, *See Linda Development Corp. v. Muir, et al.,* 3 Pa. Commonwealth Ct. 334, A. 2d (1971); nor that applications are not subject to amendment by testimony heard by the Zoning Hearing Board. I would, however, hold that amendatory testimony must relate a present not a speculative intent to use the property. *See, infra.*

mony that the Post also intended to set up recreational facilities (conceivably would open the use to the general public), which violates the second proviso of Section 203.1(4)(e), the Board stated ". . . this application is treated as an application for a special exception to operate an American Legion Post only as nothing herein contained may be construed as an implied consent to provide baseball diamonds and playground equipment to the public generally, or nonmember groups." (Emphasis added.) It is the duty of the Board, and of this Court, to decide whether the use sought in the application is a lawful one. It is not for us to speculate whether a modification, or a radical departure in the post-existent activities would constitute an unlawful use.

The application herein reviewed does not represent that "a principal activity" is the sale of alcoholic beverages, much less a profit-making enterprise for the economic benefit of an individual, partnership or corporation, customarily considered to be the purpose of the liquor and beer dispensing business. Rather, the Board found as fact that "[p]ersons desiring to drink on the premises presently, would be required to furnish their own liquor, but that liquor was generally furnished though not sold for post parties." If, in the future, the Post's *principal* activity as a business is the sale of alcoholic beverages,[3] the use could be the subject

---

[3] As I view it, the majority fails to consider the realistic interpretation available when it concludes that the applicant violates the first proviso of Section 203.1(4)(e) which reads: ". . . provided that a principal activity shall not be one which is customarily carried on as a business. . . ." While this language clearly lends itself to the majority's theoretical interpretation that the term "customary use" refers to an activity which is customarily carried on as a business generally throughout the community or in the Commonwealth, this interpretation, in my judgment leads to absurd results when we apply it to the subsections as a whole. For example, "nonprofit swimming pools" are permitted, subject to the limitation of the proviso. However, since the activity which pro-

of injunction proceedings on the theory that it violates Section 203.1(4)(e). Illegal conduct cannot be inferred, without more, from evidence that there is a probability that sometime liquor and beer will be sold at the Post. This testimony does not establish an illegal activity ab initio nor in futuro. But more importantly, it provides no evidentiary basis upon which to assess whether the activity undertaken will constitute "a principal activity" of the Post.[4] Zoning applications are restricted to statements of present intent because one cannot prophesize the factual situation resulting from present statements of future intention. As stated by President Judge Bowman in *Mill-Bridge Realty, Inc. v. Manchester Township Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 157,    A. 2d    (January 17, 1972), ". . . our responsibility in judicial review is not to draw independent inferences from [the record] to support a reversal or to affirm the granting of the spe-

---

vides swimming facilities to groups of persons is customarily carried on as a business, would not the proviso, as interpreted above, prohibit swimming clubs? Turkey dinners, Beef and Ham, Clambakes, regularly the social activities of churches, lodges and veterans' organizations, among others, could very well, without in depth perception be considered the "carrying on of a (restaurant) business." A common sense approach, I submit, would be to evaluate the relationship between the specific activity and the specific user and determine whether this applicant is as a custom "carrying on a business." In the instant case, the procedure would consist of a presentation of evidence, from which it could be adduced whether the liquor license would be used as a business in the usual commercial connotation or whether it was incidental to the fraternal promotion the Post dedicates itself to generate.

[4] The majority has apparently reached its conclusion without considering whether the dispensing of alcoholic beverages is a principal activity of this fraternal organization or whether that activity is secondary to other services and activities performed by that organization, e.g., an inducement to participate in the functions of the Post. To hold that applicant violates Section 203.1(4)(e) without considering this question after taking proper testimony, is clearly erroneous.

cial exceptions." Since the present intent of the applicant does not violate Section 203.1(4)(e), and since the Board has correctly passed upon the remaining issues involved in this appeal, I would affirm.

Judge KRAMER joins in this Dissent.