Alexander Yarnall, Appellant *v.* Dr. Samuel D. Allen, Jr. and Radnor Township Zoning Hearing Board, Appellees.

Argued March 5, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Henry B. Fitzpatrick, Jr., Liebert, Short, Fitzpatrick & Lavin,* for appellant.

*Joseph A. Damico, Jr., Petriken, Wellman, Damico & Carney,* for appellee, Dr. Samuel D. Allen, Jr.

*Charles B. Burr, II,* for appellee, Radnor Township Zoning Hearing Board.

OPINION BY JUDGE CRAIG, May 12, 1982:

Alexander Yarnell (objector) appeals from an order of the Court of Common Pleas of Delaware County which affirmed a decision by the Radnor Township Zoning Hearing Board granting a special exception for the establishment of an alcoholic rehabilitation center at a site formerly used as a junior college.

The applicant has an option to purchase the land, zoned "Institutional." The use regulations for that classification, found at Section 135-72(D) of the township's ordinance, allow:

> *Any institutional use* similar to a use specifically permitted above, *such as a* museum or art gallery or an institution or home for children, the aged, the indigent or the handicapped, or a hospital (general, medical or surgical), *sanatorium,* medical or health center, convalescent home, nursing home or similar health facility, when authorized as a special exception by the Zoning Hearing Board, subject to the general standards prescribed in §135-123. (Emphasis supplied.)

Section 135-123[1] requires the board to determine that eight lettered "standards and criteria are met before granting" a request for a special exception or variance.

---

[1] §135-123. Standards: review of special exceptions and variances.

In any instance where the Zoning Hearing Board is required to consider a request for a special exception or variance, the Zoning Hearing Board must determine that the following standards and criteria are met before granting the request:

A. The size, scope, extent and character of the special exception or variance requested is consistent with the 1969 Planning Study of the township and promotes the harmonious and orderly development of the zoning district involved.

B. The proposed change or modification constitutes an appropriate use consistent with the character and type of development in the area surrounding the location for which the request is made and will not substantially injure or detract from the use of surrounding property or the character of the neighborhood in light of the zoning classification of the area affected; the effect on other properties in the area; the number, extent and scope of non-conforming uses in the area; and the presence or the absence in the neighborhood of conditions or uses which are the same or similar in character to the condition or use for which applicant seeks approval.

C. The proposed use is suitable with respect to traffic and highways in the area and provides for adequate access and off-street parking arrangements in order to protect major streets and highways from undue congestion and hazard.

D. Major street and highway frontage will be developed so as to limit the total number of access points and encourage the frontage of buildings on parallel marginal roads or on roads perpendicular to the major street or highway.

E. The proposed change is reasonable in terms of the logical, efficient and economical extension of public services and facilities, such as public water, sewers, police, fire protection and public schools, and assures adequate arrangements for sanitation in specific instances.

After finding that the applicant's intended use of the premises was a "sanatorium," authorized by special exception, the board determined that "no proof" existed that the proposed use "would in anyway be contrary to the standards" set forth in the ordinance, or that the special exception would be detrimental to the public health, safety, morals and general welfare of the township. The board granted the application, subject to ten conditions governing the use of the premises as a rehabilitation center.

The common pleas court reviewed the testimony and concluded that the applicant met "his only burden of proof in a special exception case . . . that the proposed use is within those uses permitted by special exception," citing *Sites v. West Goshen Township,* 5 Pa. Commonwealth Ct. 78, 287 A.2d 909 (1972) and *Berlant v. Lower Merion Township,* 2 Pa. Commonwealth Ct. 583, 279 A.2d 400 (1971).

The objector now claims that the applicant had the burden of going forward with the evidence and proving that the proposed use complied with all the standards found in Section 135-123, except the general health, safety and welfare requirement of subsection

F. All commercial or industrial parking, loading, access or service areas will be adequately illuminated at night while in use and arranged so as to comply with the requirements of §135-103.

G. Conditions are being imposed on the grant of the request necessary to ensure that the general purpose and intent of this chapter is complied with and that the use of the property adjacent to the area included in the proposed change or modification is adequately safeguarded with respect to harmonious design of buildings, aesthetics, planting and its maintenance as a sight or sound screen, landscaping, hours of operation, lighting, numbers of persons involved, allied activities, ventilation, noise, sanitation, safety, smoke and fume control and the minimizing of noxious, offensive or hazardous elements.

H. The proposed change protects and promotes the safety, health, morals and general welfare of the township.

H. *Bray v. Zoning Board of Adjustment and Somerton Civil Association,* 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980).

Close scrutiny of the ordinance reveals that the applicant fulfilled his initial evidence presentation duty and persuasion burden with respect to the specific "categorical definition of the special exception as a use type," *Bray* at 530, 410 A.2d at 913.

Of the eight criteria outlined in Section 135-123, which we have reproduced in the footnote to this opinion, the terms of all but one obviously relate to *general* policy concerns as to harmony with the purposes of the ordinance or to *general* detrimental effect upon the neighborhood; thus, as to those seven criteria (all but F) the objector had both the duty to go forward with evidence and the burden of persuasion to establish a case sufficient to warrant denial of the application. *Bray* at 531, 410 A.2d at 913.

Subsection 135-123 F, however, is clearly a specific requirement as to which the applicant had the burden of proving compliance because that subsection incorporates the objective standards governing the use as a special exception found in Section 135-103—"Access and highway frontage regulations—relating to illumination (§135-103 D, E) and parking layout (§135-103 A, F).

The objector, appellant here, has failed to include in the record the plans for the project, which would confirm to us whether the applicant complied with those provisions. However, because the applicant plans to use the existing structures of the junior college for the rehabilitation center, and because the criteria in Section 135-103 A, D, E and F deal straightforwardly with outside illumination and parking arrangement areas, we must view the applicant's satisfaction of the burden as embodied in the board's broad but definite finding of compliance with the ordinance.

The objector also attacks as erroneous the board's "misinterpretation of the ordinance," claiming that Section 135-75 mandates review of the application by the Planning Commission:

§135-75.  Future use of institutional lands.

It is the intent of this Article that provision be made to ensure a reasonable choice of appropriate uses in the case of the nonuse, abandonment or sale of property presently zoned for institutional use. In such an event, the Planning Commission shall consider the suitability of such tract for continued institutional use or for uses permitted in Agricultural, Planned Laboratory-Office, Planned Business, Planned Apartment or Residence Districts and shall, where deemed appropriate, recommend that the Zoning Map be amended to accommodate such uses.

The general wording of the provision appears to place the initiative for any consideration upon the commission, rather than upon the applicant; in addition, the qualification is not identified as any part of the special exception procedure, but merely appears at the end of Article XVII establishing general regulations for I-Institutional Districts. Therefore, we cannot conclude that the board erred in proceeding as it did.

Finally, the objector claims that he was denied an opportunity to ascertain the facts necessary to carry his burden of proving that the use would have an adverse effect on the health, safety, morals and welfare of the community, thus depriving him of due process of law. His contention is that the board required him to go forward with his case immediately at the conclusion of the applicant's case without granting a later hearing, a procedure he labels as "needlessly oppressive."

This court's holding in *Bray* clearly establishes that the objector must come forward first with evidence as to general policy concerns or detrimental effect; the opportunity to consult with witnesses after the applicant presents his case has never been a requirement for due process in the context of hearings before the board.

Because the objectors thus were not "rebutting" the testimony of the applicant's witnesses on those general concerns, the objector was not entitled to a delayed hearing. Counsel for several other objectors had expressed readiness at the first hearing to present testimony on the merits of the attack; the board heard testimony in the second hearing only because of time constraints which arose from the length of the first meeting.

Finding no error of law or abuse of discretion, we affirm. *Timber Place Association v. Plymouth Township Zoning Hearing Board,* 59 Pa. Commonwealth Ct. 582, 430 A.2d 403 (1981).

ORDER

Now, May 12, 1982, the order of the Court of Common Pleas of Delaware County, No. 81-2418, dated July 16, 1981, is affirmed.

This decision was reached prior to the resignation of Judge MENCER.