IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tinicum 15 Industrial Highway, L.P., :
             Appellant :
              :
      v. : No. 32 C.D. 2019
       : ARGUED: November 14, 2019
Tinicum Township Zoning Hearing :
Board :
              :
      v. :
              :
500 Wanamaker Avenue Partners, :
LLC :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED: January 13, 2020

Appellant Tinicum 15 Industrial Highway, L.P. (Industrial) has appealed the
Court of Common Pleas of Delaware County's (Trial Court) December 19, 2018
amended order,[1] which denied Industrial's statutory appeal of Appellee Tinicum
Township Zoning Hearing Board's (Zoning Board) May 17, 2018 decision. Through
that decision, the Zoning Board granted Appellee 500 Wanamaker Avenue Partners,
LLC's (Wanamaker) application for zoning relief pertaining to a property in
Tinicum Township (Township). Upon review, we reverse.

**Facts and Procedural History**

Wanamaker is the equitable owner of a 2.47-acre property (Property), one
zoned SU-1 (*i.e.*, "special use") and located at 500 Wanamaker Avenue in the

_____

[1] This order was docketed on December 20, 2018.

Township. Board's Findings of Fact (F.F.), ¶¶1, 3. The Property, which is close to I-95, is bounded by Industrial Highway to the south and Wanamaker Avenue to the east. Wanamaker wishes to demolish the existing church and school structures on the Property and, in their place, erect a roughly 5,600-square-foot Wawa convenience store, as well as 9 gas pumps (allowing for the simultaneous fueling of 18 vehicles), 8 Tesla electric vehicle charging stations, 2 air pumps, and 65 parking spaces. *Id.*, ¶¶12-13. In furtherance of this desire, Wanamaker filed an application with the Zoning Board. Therein, Wanamaker requested that the Zoning Board recommend to the Township Board of Commissioners (Board of Commissioners) that this convenience store/gas station development plan be deemed an authorized use of the Property. *Id.*, ¶5.[2] In addition, Wanamaker sought the following relief:

---

[2] The Township Zoning Ordinance (Zoning Ordinance) tasked Wanamaker with obtaining such a recommendation because of how the Property is zoned:

> In SU-1 Special Use Districts, the following regulations shall apply:
>
> > A. A plan or plans shall be submitted to the [Board of] Commissioners and the Zoning . . . Board. The Zoning . . . Board shall review said plans and make recommendations to the [Board of] Commissioners. However, approval of said plans shall be made by the [Board of] Commissioners.
> >
> > . . . .
> >
> > B. Use regulations. A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other, provided such structure or use is in accordance with the above plan:
> >
> > . . . .
> >
> > > (6) Such other uses as shall be determined by the Board of Commissioners after hearing, upon giving two weeks' public notice of the time and place of the hearing and of the proposed use.

Zoning Ordinance § 395-19.

a. A determination that the existing lot area is presently non-conforming as to the minimum 4 acre lot area requirement per [Zoning Ordinance] Section 61-5.1.C(1);

b. A [dimensional] variance from [Zoning Ordinance] Section 61-5.1.C(2) to permit more than 66 2/3% of the lot area to be [] occupied by buildings, parking and parking access areas;

c. A [dimensional] variance from [Zoning Ordinance] Section 61-5.1.C(3) to permit a building setback of less than 100 feet from the street right-of-way;

d. A [dimensional] variance with respect to [Zoning Ordinance] Section 61-2002 to permit a principal building or part thereof to be located within the front yard;

e. A [dimensional] variance from [Zoning Ordinance] Section 61-2003 to permit an accessory structure to be located within the front yard and closer to the side street than the principal building;

f. A [dimensional] variance from [Zoning Ordinance] Section 61-2009.3 to permit less than the specific requirements for landscaping;

g. A [dimensional] variance with respect to [Zoning Ordinance] Section 61-2204.2 to permit handicapped parking spaces less than 12' in width, but still complying with [the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213] Standards for Accessible Design;

h. A [dimensional] variance from applicable signage provisions to permit such signage;

i. A determination that the proposed development is not adjacent to a residential district, or in the alternative, [dimensional] variance from residential screening requirements of [Zoning Ordinance] Section 61-2008, buffer yard requirements of [Zoning Ordinance] Section 6l-5.1.E, the sign regulations of [Zoning Ordinance] Article VII and any other applicable provisions of the Zoning Ordinance. . . .

j. Any such other relief necessary in order to permit the proposed use.

3

*Id.*, ¶6.

The Zoning Board then held a public hearing regarding Wanamaker's requests on April 19, 2018. Prior to anything of substance being presented, David S. Daniel, Esquire, identified himself as representing Raj Singh, Industrial's partner, and stated that Industrial is the owner operator of a Sunoco gas station immediately to the west of the Property. Notes of Testimony (N.T.), 4/19/18, at 4. Mr. Daniel requested party status on behalf of Industrial. *Id.* Wanamaker objected, arguing Industrial would not be harmed by approval of Wanamaker's zoning application. *Id.* In addition, Wanamaker claimed that Industrial's real concern was the potential for additional competition, which would not be a proper basis for challenging Wanamaker's zoning application. *Id.* at 5. Township Solicitor J. Adam Matlawski, Esquire, suggested that the Zoning Board grant Industrial party status, "[b]ecause I guess it will be determined [during the course of the hearing] whether or not they're adversely affected [by Wanamaker's application], but they certainly will be affected." *Id.* The Zoning Board followed Mr. Matlawski's advice and overruled Wanamaker's objection. *Id.* Curiously, however, the Board never returned during the hearing to whether Industrial was adversely affected by Wanamaker's application.

Herb MacCombie, the Township's Zoning Officer, then testified that the Property is an existing non-conforming parcel, in that it is smaller than the four acres required by the Zoning Ordinance for lots zoned SU-1. *Id.* at 6-7.

Wanamaker subsequently presented evidence and witnesses in support of its application. Joel Kepner, Wanamaker's developer, testified that he had identified the Property as a suitable location for the proposed development, because it was "substantially vacant" and due to its proximity to a number of high-traffic arteries. *Id.* at 19-20. Mr. Kepner stated he had negotiated the Property's sale with then-owner

4

the Archdiocese of Philadelphia and had met with Mr. MacCombie, as well as the Board of Commissioners, during the course of designing the proposed development. *Id.* at 20-22. Mr. Kepner also described the project in detail and expressed his belief that the Wawa convenience store/gas station would benefit the surrounding community. *Id.* at 22-29.

Matthew Hammond, a licensed engineer with Traffic Planning and Design, was then qualified by the Zoning Board as an expert in traffic engineering. *Id.* at 31-33. He discussed a traffic impact study and a "scoping application" that his firm had completed with regard to the Wawa project, as well as how vehicle access to and from the Property would be facilitated. *Id.* at 33-47. Mr. Hammond stated that he thought, as far as vehicular traffic, the proposed development would be an appropriate use of the Property that would not adversely affect the surrounding area. *Id.* at 47-49. Mr. Daniel briefly cross-examined Mr. Hammond regarding how the vehicle traffic projections contained in the traffic impact study had been created and about how the proposed access alterations would affect public safety in the vicinity. *Id.* at 49-54.

Eric Britz, a licensed engineer with Bohler Engineering, was then qualified by the Zoning Board as an expert in site design and land development. *Id.* at 60-62. Mr. Britz began by stating that the Wawa development plan, if implemented, would improve stormwater management both nearby and Township-wide. *Id.* at 63-64. He then claimed that the Property is difficult to develop because it is long and narrow, "but adequately fits the [proposed] use . . . if we do receive the relief we're seeking[.]" *Id.* at 65-66. Mr. Britz briefly described the particulars of the development plan, touching upon how deliveries would be made to the Property, as well as the landscaping and stormwater management plans. *Id.* at 66-68. Next, he

5

acknowledged the Zoning Ordinance's setback requirement of 100 feet, noting that the proposed development called for a 38.4-foot setback from Wanamaker Avenue (up from the existing 34 feet) and a 198-foot setback from Industrial Highway (an increase from the current 86 feet). *Id.* at 69-71. Mr. Britz then stated that the Wawa convenience store would be 5,585 square feet in size, a marked decrease from the existing structures' footprint of 19,147 square feet, as well as that the development plan called for a Zoning Ordinance-compliant number of parking spaces. *Id.* at 71-73.

Next, Mr. Britz testified that the proposed use was similar to that of many other properties in the area. *Id.* at 73-76. In addition, he averred that the Zoning Ordinance's parking space requirements made it impossible to conform to the Zoning Ordinance's impervious coverage limit of 66 2/3%, even if Wanamaker decreased the number of spaces from the proposed 65 to the necessary minimum of 53. *Id.* at 76-79. Mr. Britz also said that the Property's odd dimensions impeded compliance with the impervious coverage limits. *Id.* at 79-80. Furthermore, he maintained that many other, nearby properties have too much impervious coverage as well and that, regardless, the proposed development would obey all applicable stormwater management requirements. *Id.* He then returned to the Zoning Ordinance's setback dictates, addressing it in tandem with the Zoning Ordinance's requirement that the Property's principal building be situated in its front yard. *Id.* at 80.[3] Mr. Britz stated that, because of the Property's dimensions and its frontage on two thoroughfares, the 100-foot requirement leaves only a "very small portion" of the Property upon which the Wawa convenience store could be situated. *Id.* at 80-

---

[3] In context, "front yard" refers to the areas of the Property that front Wanamaker Avenue and/or Industrial Highway. Thus, the Property has two front yards.

81. He also said that many other properties in the area have noncompliant primary buildings and, thus, that the proposed convenience store would not be out-of-place at that location. *Id.* at 81-82. Next, he maintained that a dimensional variance was necessary to allow an accessory structure (*i.e.*, the fuel pump canopy) to be located in the Property's front yard, as well as closer to the side street than the principal building (*i.e.*, the Wawa convenience store). This was so because the Property has two front yards (*i.e.*, one abutting Industrial Highway and the other adjacent to Wanamaker Avenue) and, thus, there was no way to avoid putting the fuel pump canopy in one of them. *Id.* at 82-83. Mr. Britz then said that Wanamaker needed dimensional relief from the Zoning Ordinance's requirement that 3 trees or shrubs be planted for every 24 feet of property frontage, as well as that there be 8 feet of landscaping buffer area at the Property's edges. *Id.* at 83-86. He claimed this was necessitated by the locations of some of the accessory structures and dedicated rights-of-way. *Id.* Next, regarding the Zoning Ordinance-mandated 12-foot-wide handicapped parking spaces, Mr. Britz asserted that the development plan actually fulfills this requirement, through the combined widths of the proposed vehicle "stalls" and "access aisles." *Id.* at 86-87. Finally, Mr. Britz stated that the development plan complies with the Zoning Ordinance's parameters regarding signage and agreed with Wanamaker's attorney that the Property was "cut off completely" from the nearby residentially zoned area by Wanamaker Avenue. *Id.* at 87-88. Mr. Britz expressed his belief that the development plan satisfied the Municipalities Planning Code's[4] (MPC) variance test[5] and, when asked by

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[5] The Zoning Ordinance does not contain a variance test of its own. Therefore, Section 910.2 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2, governs the Zoning Board's ability to grant variances in the Township.

Wanamaker's attorney whether the desired variances were the minimum necessary to afford relief, replied "Yes" without elaboration. *Id.* at 88-89.

Mr. Daniel then briefly cross-examined Mr. Britz. During this exchange, Mr. Daniel specifically asked Mr. Britz whether Wanamaker could comply with the Zoning Ordinance's impervious coverage limits by either building the Wawa convenience store, without any other accessory structures, or only constructing a bank of fuel pumps along with a small cashier's hut. *Id.* at 90-91. Mr. Britz responded that he had not considered those possibilities and therefore could not answer the question. *Id.* at 91.

Finally, Theodore Iobst, Wawa's senior engineering manager for the Mid-Atlantic region, testified about Wawa's longstanding presence in Delaware County, the consumer services Wawa would offer at the proposed Wanamaker Avenue location, and Wawa's hiring practices. *Id.* at 92-97. Mr. Iobst also went into detail about the signage that would be present at this convenience store/gas station; in his opinion, this signage would be far less obtrusive than that of other, nearby businesses, including Industrial's Sunoco station. *Id.* at 97-105. In addition, Mr. Iobst expressed his belief that the Property's dimensions created a hardship impacting where signage could be placed, as well as that the proposed development would not negatively affect the health, safety, or welfare of the community. *Id.* at 101-02, 105.[6]

The Zoning Board offered Mr. Daniel the opportunity to present evidence and witnesses, which he declined. The floor was then opened to comments from the general public. *Id.* at 108-09. In response to these comments, Mr. Hammond, the

---

[6] Mr. Daniel also cross-examined Mr. Iobst, asking him a handful of questions about fuel deliveries to Wawa and how Mr. Iobst obtained the dimensions of signage at Industrial's Sunoco. N.T., 4/19/18, at 105-06.

engineer from Traffic Planning and Design, provided additional details about how the traffic impact study had been modelled and how the proposed Wawa convenience store/gas station would affect nearby vehicular traffic. *Id.* at 109-18. Mr. Hammond also stated that the developers of the Wanamaker Avenue project "have been . . . [and] will continue to be in constant contact with [the Pennsylvania Department of Transportation]." *Id.* at 124.

At the close of the evidentiary portion of the hearing, Mr. Daniel gave a brief closing statement on behalf of Mr. Singh. Mr. Daniel maintained that Wanamaker had not proven the existence of a hardship justifying the requested variance relief, as the Property could be developed in a way that fully complies with the Zoning Ordinance. *Id.* at 124. The Zoning Board then closed the hearing and informed those present that it would issue its decision at the next scheduled public hearing on May 17, 2018. *Id.* at 125.

On May 17, 2018, the Zoning Board formally and unanimously granted Wanamaker's application in full, subject to certain conditions. Reproduced Record (R.R.) at 3-6 (Zoning Board's Decision); Zoning Board's Conclusions of Law (C.L.), ¶12. The Zoning Board concluded that each of Wanamaker's witnesses were credible and Wanamaker had shown it was entitled to its desired dimensional variances, the requested determination regarding the Property's nonconforming size, and the sought-after determination that the proposed development is not adjacent to a residential district. C.L., ¶¶10-12.[7] In addition, the Zoning Board accepted Wanamaker's request that the Zoning Board recommend to the Board of

---

[7] The Zoning Board also granted relief in the alternative regarding proximity to residential development, concluding that Wanamaker was entitled to dimensional variance relief from the Zoning Ordinance's residential screening, buffer yard, and signage regulations. C.L., ¶12.

9

Commissioners that this convenience store/gas station development plan be deemed an authorized use of the Property. *Id.*, ¶12.

On June 13, 2018, Industrial appealed the Zoning Board's decision to the Trial Court. Industrial argued that the Zoning Board had erred in granting the dimensional variances, as Wanamaker had failed to satisfy the MPC's variance test and the Zoning Board's conclusion to the contrary was not supported by substantial evidence. Land Use Appeal, ¶¶11-13.

On July 26, 2018, Wanamaker filed a "Petition to Quash Appeal, Or Alternatively To Require Appellant To Post A Bond Pursuant to 53 P.S. § 11003-A(d)[8]" (Petition to Quash). Wanamaker argued that Industrial's appeal should be quashed, or Industrial should be required to post a bond, "because [Industrial] lacks standing, presented no opposition evidence, and has no realistic chance of proving that the [Zoning] Board abused its discretion in making factual findings and applying its own Zoning [Ordinance]." Petition to Quash, ¶¶24-31. Wanamaker maintained that Industrial's appeal was spurred by nothing more than "anti-competitive interests[.]" *Id.*, ¶24. Industrial responded in opposition to the Petition to Quash, arguing in part that it had standing because it owned the Sunoco neighboring the Property. Memorandum of Law in Opposition to Petition to Quash at 3-6. The Trial Court denied the Petition to Quash on September 5, 2018, with prejudice, but did not explain the reasoning behind this decision. Trial Ct. Order, 9/5/18, at 1.

The Trial Court then held oral argument on December 13, 2018, but took no additional evidence. During that hearing, Wanamaker's attorney again brought up the issue of Industrial's standing:

---

[8] Section 1003-A(d) of the MPC, added by the Act of December 21, 1988, P.L 1329, 53 P.S. § 11003-A(d).

> Your Honor[,] the elephant in the room here is that [Industrial] is not only a neighboring property owner, but they are a gas station with a mini-market. I would respectfully suggest that is the interest that they are trying to protect here.
>
> . . . .
>
> I know that the [Petition] to [Q]uash based on standing was denied, and I am not going to regurgitate. But the argument is in there — and I know [Industrial had] standing before the Zoning . . . Board as a neighboring property owner. . . . It is just I think still relevant even though we are not challenging standing before the Zoning . . . Board on appeal that they have to show some kind of harm. And there is nothing in the record to show again the traffic or storm water is harming them. And essentially what we have[,] You Honor, is an anti-competitive appeal here that is causing [Wanamaker] a great deal of harm every week and is benefitting [Industrial] while it goes on.

Trial Ct. Arg. Tr., 12/13/18, at 7, 15-16.

On December 19, 2018, the Trial Court denied Industrial's appeal. Trial Ct. Am. Order, 12/19/18, at 1. On January 9, 2019, Industrial appealed the Trial Court's ruling to our Court. That same day, the Trial Court ordered Industrial to file a Concise Statement of Errors Complained of on Appeal within 21 days, which Industrial satisfied on January 28, 2019. The Trial Court then issued an opinion on March 27, 2019, in which it stated that the Zoning Board's decision to grant Wanamaker's desired variances was supported by substantial evidence and comported with the requirements of the MPC's variance test. Trial Ct. Op. at 12-20. In addition, the Trial Court appeared to contradict its earlier ruling regarding Industrial's standing, maintaining:

> [Industrial] failed to present any evidence that it would suffer legitimate harm. There is no dispute that [Industrial] operates a Sunoco gasoline service station adjacent to [the P]roperty. The Trial Court can take judicial notice that the

11

proposed Wawa gasoline service station will be a competitor of the adjacent Sunoco gasoline service station.

Evidence as to competition or sufficient marketplace is not relevant in land use cases. . . . *Appeal of Farmland Industries, Inc.,* 531 A.2d 79 (Pa. Cmwlth. 1987)[; *Appeal of Michael J. Stefonick from the Decision of the Zoning Hearing Bd. of Upper Gwynedd Twp.,* 271 A.2d 707 (Pa. Cmwlth. 1970)]. The Trial Court finds that [Industrial's] appeal is a thinly veiled and inappropriate attempt to use the Zoning [Ordinance] as a vehicle to thwart a fellow competitor from becoming its "next door neighbor."

As to [Industrial's] argument regarding traffic concerns, the Record is devoid of any evidence showing such harm that affects it. Rather, [Industrial] made conclusory statements as to the exacerbation of traffic problems. However, opponents to land use applications can't rely on conclusory claims to prove traffic hazards. . . . *In re Brickstone Realty Corp.*, 789 A.2d 333, 342 (Pa. Cmwlth. 2001)[; *Nernberg v. City of Pittsburgh*, 620 A.2d 692, 696 (Pa. Cmwlth. 1993)]. Contrary to [Industrial's] argument . . . Wanamaker provided sufficient evidence illustrating that no such harm existed through the admission of the testimony of [Mr. Hammond] and the traffic [impact] study. As to [Industrial's] argument to flooding issues on the Property, the Record is devoid of any evidence to support such harm. Furthermore . . . Wanamaker presented uncontroverted evidence that it would be installing a comprehensive stormwater management system on the Property. The Trial Court finds [Industrial's] argument as to flooding to be disingenuous because its own property is 100% impervious.

*Id.* at 20-21.

Industrial reiterates its position that the Zoning Board erred in granting Wanamaker's desired variances, maintaining that Wanamaker failed to satisfy the requirements of the MPC's variance test. Industrial's Am. Br. at 5-6. In particular, Industrial argues that there is no record evidence that would support the Zoning Board's conclusion that these dimensional variances were the minimum relief necessary to enable development of the Property. *Id.* at 7-12. Rather, Industrial claims, Wanamaker simply wishes to develop the Property as it sees fit, which cannot be done without variance relief, and consequently did not bother to entertain other possibilities that would fit safely within the Zoning Ordinance's dimensional restrictions. *Id.*

In response, Wanamaker argues that the Zoning Board's decision was supported by substantial evidence and that Industrial ignores the fact that, when contrasted with use variances, there is a more relaxed standard for granting dimensional variances. Wanamaker's Br. at 10-12. Wanamaker also claims that both the record evidence and case law supports the Zoning Board's conclusion that the granted variances were the minimum necessary to enable development of the Property. *Id.* at 12-21. Finally, Wanamaker again maintains that Industrial does not have standing, as it presented no evidence that it would be harmed by the Zoning

---

[9] Since the Trial Court took no additional evidence, our standard of review is restricted to determining whether the Zoning Board committed an abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). "We may conclude that the [Zoning] Board abused its discretion only if its findings are not supported by substantial evidence. . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 640 (citations omitted).

Board's decision to grant the dimensional variances and, according to Wanamaker, is simply trying to prevent a competitor from opening up next door. *Id.* at 21-24.[10]

### Discussion

We first address the issue of whether Industrial established standing before the Zoning Board.

> A person who wishes to contest a zoning approval can initiate an appeal or challenge if he is a "person aggrieved." Section 913.3 of the MPC[, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.3].[1] To establish "aggrieved" status for purposes of standing, a party must have a substantial, direct, and immediate interest in the claim sought to be litigated. *Laughman v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19 (Pa. Cmwlth. 2009). In order to have a substantial interest, there must be some discernible adverse [e]ffect to some interest other than the abstract interest of all citizens in having others comply with the law. *Pilchesky v. Doherty*, 941 A.2d 95 (Pa. Cmwlth. 2008). The interest must be immediate and not a remote consequence of the judgment. *Id.* A person has standing where he has suffered or will suffer "injury in fact" and the interest he seeks to protect is arguably within the zone of interest sought to be protected or regulated by the statute or constitutional guarantee in question. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269 ([Pa.] 1975).

*In re Broad Mountain Development Co., LLC*, 17 A.3d 434, 440 (Pa. Cmwlth. 2011).

> "To be a 'party aggrieved' so as to have standing to appeal a zoning board decision, a person must (1) have actively participated as a party in the proceedings before the zoning board; and (2) be directly and adversely affected by the zoning board's decision." *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing [Bd.]*, . . . 500 A.2d 1253, 1257 ([Pa. Cmwlth.] 1985). An owner of property within close proximity to the subject

---

[10] The Zoning Board echoes Wanamaker's argument that its decision to grant the dimensional variances was neither an abuse of discretion nor an error of law. Township's Br. at 11-14. However, the Zoning Board does not attack Industrial's standing.

property is presumed to have been directly and adversely affected by the zoning decision. *Laughman v. Zoning Hearing [Bd.] of Newberry [Twp.]*, 964 A.2d 19, 22 (Pa. Cmwlth. 2009).

*Walters v. Zoning Hearing Bd. of City of Easton*, 125 A.3d 479, 482 (Pa. Cmwlth. 2015).

Industrial does not explicitly address the question of standing in its Amended Brief, merely stating that "the breadth of [its] participation at the zoning hearing is irrelevant" and citing in support of this claim *Abe Oil and C&G Realty Company v. Zoning Hearing Board of Richland Township*, 649 A.2d 182 (Pa. Cmwlth. 1994). *See* Industrial's Am. Br. at 6-7.

Like this case, *Abe Oil* involved an existing gas station (Abe Oil) and a neighboring, proposed one (Farm and Home), as well as Abe Oil's appeal of variances granted to Farm and Home. 649 A.2d at 183. On appeal to our Court, Farm and Home argued that Abe Oil did not have standing to appeal the zoning hearing board's decision, because Abe Oil had not presented evidence showing it would be detrimentally affected by the variance relief that was granted and, instead, was simply attacking the decision as a "business competitor[.]" *Id.* at 184. We held that Farm and Home had waived this issue by failing to raise it before either the zoning hearing board or court of common pleas. *Id.* at 185. We also stated:

> Even if standing had been raised below, we would hold that Abe Oil's status is not only as a business competitor, but as a "person affected" by Farm and Home's application. Section 908(3) of the [MPC] provides:
>
>> The parties to the hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board and any other person including civic or community organizations permitted to appear by the board....

15

53 P.S. § 10908(3). Abe Oil's property is directly affected because it is catty-corner from the proposed gas station, and Abe Oil expressed concerns about traffic and storm water runoff at the hearing, as did other adjacent property owners. The [zoning hearing board] provided notice to Abe Oil of the hearing and permitted testimony from Abe Oil demonstrating that Abe Oil was an "affected person."

*Id.* at 185 n.3.

Here, Industrial's participation in the April 19, 2018 Zoning Board hearing was certainly of a lesser degree than that of the appellant in *Abe Oil*. Industrial presented no evidence or witnesses, and its presence was confined to Mr. Daniel, Raj Singh's attorney, who made a handful of brief statements on behalf of his client and attempted to poke holes in Wanamaker's witness testimony on cross-examination. Even so, this limited involvement, when combined with the presumption of direct and adverse impact upon Industrial as Wanamaker's next-door neighbor, is sufficient to imbue Industrial with standing in this matter.

Turning to the substance of Industrial's appeal, Section 910.2(a) of the MPC makes clear that an applicant's request for a variance should be granted only where the following conditions are satisfied:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

16

(3) That such unnecessary hardship has not been created by the [applicant].

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a).

"To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building [or property] into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). "The quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 48.

However, this does not mean that "dimensional requirements . . . [are] 'free-fire zones'[.]" *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Phila.*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001). To that effect, our appellate courts have "consistently reject[ed] requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." *Soc'y Hill Civic Ass'n v. Philadelphia Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012). Indeed, "[a] variance, whether labeled dimensional or use, is appropriate

'only where the *property*, not the person, is subject to hardship.'" *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). Thus, the onus is on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* dimensionally compliant uses of the property, not just the particular use [that the applicant has chosen]." *Yeager*, 779 A.2d at 598 (emphasis in original).

Here, the record is devoid of any evidence showing that Wanamaker attempted to develop the Property without the need for dimensional variances. Rather, as shown in particular by Mr. Britz's testimony, it seems that Wanamaker did not contemplate different or smaller development options, but instead began with the goal of building its desired Wawa convenience store/gas station and then directed its efforts towards shoehorning the project onto the Property. Though Mr. Britz flatly stated that the desired variances were the minimum necessary to facilitate the Property's development, there is simply nothing substantive in the record to back up that assertion. Furthermore, the Zoning Board granted dimensional variances regarding signage and handicapped parking, even though Mr. Britz testified that the development plan, as presented to the Zoning Board, rendered such variances unnecessary. Therefore, the Zoning Board's decision to grant Wanamaker's requested dimensional variances is not supported by substantial evidence and constitutes an abuse of discretion, as well as an error of law.

## Conclusion

Accordingly, in keeping with our aforementioned reasoning, we reverse the

18

Trial Court's December 19, 2018 order, which denied Industrial's statutory appeal of the Zoning Board's May 17, 2018 decision.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tinicum 15 Industrial Highway, L.P., :
               Appellant :
                            :
         v. : No. 32 C.D. 2019
                            :
Tinicum Township Zoning Hearing :
Board :
                            :
         v. :
                            :
500 Wanamaker Avenue Partners, :
LLC :

**O R D E R**

AND NOW, this 13th day of January, 2020, the Court of Common Pleas of Delaware County's December 19, 2018 order, which denied Appellant Tinicum 15 Industrial Highway, L.P.'s statutory appeal of Appellee Tinicum Township Zoning Hearing Board's (Zoning Board) May 17, 2018 decision, through which the Zoning Board granted Appellee 500 Wanamaker Avenue Partners, LLC's application for zoning relief, is hereby REVERSED.

 

_____
ELLEN CEISLER, Judge